**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL L. BLUMENTHAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | Court No. |
| MATTHEW H. ANSELMO, | ) | |
| M & M MARKETING, L.L.C., and Kathryn | ) | |
| HEMENWAY | ) | |
| | ) | |
| Defendants. | ) | |

**FILED**

**DECEMBER 26, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**PH**

**07 C 7230**

**JUDGE GOTTSCHALL
MAGISTRATE JUDGE MASON**

## COMPLAINT

**NOW COMES** the Plaintiff, MICHAEL L. BLUMENTHAL, by and through his attorneys, MARTIN A. BLUMENTHAL and Michael L. Blumenthal, and for his cause of action against the Defendants, MATTHEW H. ANSELMO, M & M MARKETING, L.L.C. and KATHRYN M. HEMENWAY states as follows:

### Facts Common to all Counts

1.    That at all times mentioned herein, Plaintiff, MICHAEL L. BLUMENTHAL, was an individual residing in and citizen of the state of Illinois with business offices located at 77 West Washington Street, Suite 1720, Chicago, Illinois 60602.

2.    That at all times mentioned herein, Defendant, MATTHEW H.  ANSELMO, was an individual citizen of the Nebraska residing at 415 Martin Drive, Belevue, Nebraska 68005-4728 and was the owner and managing director of a full service marketing company known as M &M MARKETING.

3.    M&M MARKETING, L.L.C. is a Nebraska Limited Liability Company

1

engaged in Marketing and sales of marketing goods and materials with its principal place of business located at 11329 P Street Omaha, Nebraska 68137.

4.      On information and belief, KATHRYN HEMENWAY is an accountant and attorney, residing in Nebraska with offices at 2543 S. 153rd Circle, Omaha, Nebraska 68137.

5.      Venue is proper in this Court because Plaintiff Blumenthal is a citizen of Illinois and resides in this district, and the solicitations that lead to the transactions giving rise to this lawsuit were directed to Plaintiff while he was within this district.

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because of the diversity of citizenship, Plaintiff Michael  Blumenthal is a citizen of Illinois and resides in ILLINOIS and all Defendants are citizens of Nebraska and reside in NEBRASKA and because the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00

7.       On or about May 3rd, 2007, Mr. Anselmo approached Michael Blumenthal and Dr. F.A. Vicari with a request to fund a business opportunity he and his company M & M Marketing, L.L.C. had with Northrup Grumman Corp.  Mr. Anselmo requested that Mr. Blumenthal and Dr. Vicari invest the combined sum of One Million Two Hundred Thousand Dollars in exchange for a piece of the deal.

8.      Mr. Anselmo explained that M & M Marketing, L.L.C. had an order from Northrup Grumman to provide a large number of specially embroidered shirts. Northrup Grumman would provide the specifications for the shirts and embroidery

2

and Mr. Anselmo and his company would purchase the shirts, have the requested designs embroidered onto them and then deliver them on the date and at the place specified by Northrup Grumman. Mr. Anselmo went on to explain that he and M & M Marketing, L.L.C. *"...were short of working capital at that time and needed funds to pay his supplier and embroiderer in order to get the job."* They promised to repay the money by Labor Day 2007 plus 25%.

9.      Mr. Blumenthal and Dr. Vicari discussed the request and followed up with Mr. Anselmo on May 7th, 2007. During that conversation and a subsequent one May 10th, 2007  Mr. Anselmo promised to repay the funds regardless of the outcome of his dealings with Northrup Grumman. Based on these representations Mr. Blumenthal ultimately agreed to provide the funds to Mr. Anselmo and M & M Marketing, L.L.C.. There were several followup calls to arrange how payment would be made. Finally it was decided that Dr. Vicari would provide Three Hundred Fifteen Thousand Dollars and Mr. Blumenthal would to provide the remaining Nine Hundred Eighty-Five Thousand Dollars to defendants Anselmo and M&M Marketing, L.L.C..

10.      In accordance with his promise, and in reliance on Mr. Anselmo's individual and representative promises, Mr. Blumenthal caused the sum of Five Hundred Forty Thousand Dollars to be wired to defendant's account on May 14, 2007 and the additional sum of Four Hundred Forty-Five Thousand Dollars on May 25, 2007.

11.      After receiving word that the wires had been sent and had arrived on May 25, 2007, Mr. Anselmo called Mr. Blumenthal and explained *"... that he and M & M*

3

*Marketing had another deal and that they needed an additional Six Hundred Thousand Dollars for in order to finance that opportunity."* Mr. Anselmo further explained that *"… the other members of his family who had agreed to provide funds were not in a position to help him and then stated that if Mr. Blumenthal was willing to advance the funds that Mr. Anselmo either individually or through M & M Marketing, L.L.C. would be in a position to repay the additional Six Hundred Thousand Dollars plus the original Nine Hundred Eighty-five Thousand Dollars plus 25% on the combined total, by June 6, 2007 when the parties were already scheduled to get together."*

12.     Mr. Blumenthal told Mr. Anselmo he would consider the proposal and get back to Mr. Anselmo in short order. Mr Blumenthal then called Dr. Vicari to discuss the new proposal from Mr. Anselmo. After conferring with Dr. Vicari, Mr. Blumenthal agreed to provide the additional funds to Mr. Anselmo and M & M Marketing, L.L.C. This information was communicated to Mr. Anselmo the same day.

13.     On May 29, 2007, Mr. Blumenthal caused the additional sum of Six Hundred Thousand Dollars to be wired to the account identified by Mr. Anselmo under the name of M&M Marketing, L.L.C..

14.     On June 6, 2007 at the place and time previously agreed upon for the delivery of the funds Mr. Anselmo failed to appear. A call to him revealed that he had had difficulty with his flight and would arrive the following day.

15.     On June 7, 2007 Mr. Anselmo arrived at the agreed upon location but without the promised funds. Mr Anselmo requested an additional ten (10) day period

of time from Mr. Blumenthal in order to repay the debt, to which Mr. Blumenthal agreed.

16.    On June 19, 2007, the next date for payment, Mr. Anselmo again failed to provide the funds due.  Mr. Blumenthal made a demand for the funds, and was told there would be an additional delay of an unspecified period of time.

17.    Telephone calls demanding payment were made to Mr. Anselmo on June 22nd, 25th, 27th, July 2nd and 3rd, 2007. During the last conversation on July 3rd, 2007 between Mr. Blumenthal and Mr. Anselmo, Mr. Anselmo promised to send out a check by Federal Express immediately after the July 4th holiday.

18.    On July 12th in an exchange of emails Mr. Anselmo indicated that he was sending out a check that day by Federal Express. The next day July 13th, 2007, a Federal Express package did in fact arrive but the anticipated funds were not enclosed. An e-mail went out from Mr. Blumenthal's computer asking about the lack of funds and Mr. Anselmo responded that 2 packages were sent. Later that day Mr. Anselmo sent another email regarding the payment wherein he indicated that:

> "... If you are referring to the check...that went to Frank...It was made out last week and I will get you the tracking number when I get in my office...."

19.    Mr. Blumenthal immediately contacted Dr. Vicari who stated that no package was received nor was there ever any tracking number provided by Mr. Anselmo or M&M Marketing, L.L.C. for the claimed second package.

20.     Additional calls to Defendants Anselmo and M&M marketing, L.L.C. demanding payment were made by Mr. Blumenthal.  Mr. Anselmo agreed to pay the sums due and owing to Mr. Blumenthal on August 18th, 2007. Once again Mr. Blumenthal was disappointed as no funds were tendered. Mr. Anselmo promised to pay the funds on August 24th, 2007. Once again Mr. Anselmo failed to tender the funds due and owing.

21.     In late September 2007, a business opportunity presented itself to Mr. Blumenthal.  He was asked to provide funds to help another company and in exchange for providing the requested funds was offered his original investment plus One Hundred Fifty Thousand Dollars to be paid within a 60 day period. Mr. Blumenthal took the matter under advisement. On September 27th and 28th Mr. Blumenthal spoke several times with Mr. Anselmo regarding the monies due, and Mr. Blumenthal once again demanded payment. Mr. Anselmo was told of the business opportunity that had been afforded Mr. Blumenthal, and Mr. Blumenthal explained that without Mr. Anselmo's tender of the funds then due and owing, that Mr. Blumenthal could not take advantage of this new opportunity.

22.     Mr Anselmo once again promised that the funds would be sent and convinced Mr. Blumenthal to go ahead and agree to provide funds for the other company. Based on Mr. Anselmo's personal assurances Mr. Blumenthal promised to provide the necessary funds to the other company within 2 weeks.

23.     On Oct 1st, 2007 after countless telephone calls that went unanswered,

Mr. Anselmo sent the following in a text message to Mr. Blumenthal:

> *"Money is out. Will be in your account by ten am. Text me when*
>
> *you get it."*

24.      On Oct 2nd, 2007 Mr Blumenthal, after receiving no funds, tried unsuccessfully to reach Mr. Anselmo by phone and then tried sending a text message asking Mr. Anselmo to call immediately.

25.      In response to the text message Mr. Anselmo responded as follows:

> *"Money is def. Out from our end. The girl that handles wires is*
>
> *going to call you & text you with tracking info"*

26.      After waiting a while and hearing nothing further from Mr. Anselmo or his bank, Mr. Blumenthal contacted the bank directly and was told there was no record of any wire going out from Mr. Anselmo's account or those of M&M Marketing, L.L.C. to Mr. Blumenthal. Mr. Blumenthal immediately sent a text message to Mr. Anselmo advising him of the information obtained and he responded as follows:

> *"You think we only have one bank? I will call you*
>
> *later..maybe..your money was sent".*

27.      Mr. Blumenthal responded as follows:

> *"Matt, I would appreciate a call now to explain what is going on.*
>
> *This is not the way to do business. I have been more than patient*
>
> *and understanding. B a man!"*

28.      The following day Mr. Blumenthal was forced to tell the other company

that he could not make good on his promise to provide the funds.

      29.     On or about October 15th, 2007, 2 checks were received by mail from Mr. Anselmo. The first check was drawn in the amount of One Million Five Hundred Fifty Thousand Dollars and the second check was for Three Hundred Eighty-seven Thousand Five Hundred Dollars. These two checks were deposited by Mr. Blumenthal on October 15th, 2007. The sum of the two checks did not equal the amount then due and owing. A telephone call to Mr. Anselmo to discuss the shortfall yielded a response indicating that he would *"...have his accountant look into the matter."* On October 19th, 2007, before hearing back from Mr. Anselmo or his Accountant, both checks were dishonored and could not be put through again. Mr. Blumenthal was charged for the dishonored checks and additional charges for other checks which were dishonored as a result of the bad checks.

      30.     Shortly thereafter, in October 2007, following additional demands by Mr. Blumenthal, Mr. Anselmo agreed to pay the sum of Two Million One Hundred Thirty-Six Thousand Three Hundred Dollars to Mr. Blumenthal in full satisfaction of the funds then due and owing taking into consideration the lost opportunity that had been missed and the expenses incurred as a result of the bounced checks. Mr. Blumenthal agreed to accept this amount in satisfaction of the debt at that time.

      31.     Following several additional collection calls, Mr. Anselmo once again, agreed to wire out the funds on October 23rd, 2007. Again no funds were received. This time however an email was sent to Dr. Vicari with a letter purporting to be from Mr.

8

Anselmo's bank explaining that a wire had in fact been sent out. A copy of this email is attached hereto and made a part hereof and marked Exhibit A.

32.     Mr. Blumenthal attempted to contact the individual identified in the October 24th, 2007, letter purportedly from U.S.Bancorp which was attached to the email to Dr. Vicari. A call to US Bancorp did not produce positive results. The bank had no record of having produced the letter and asked Mr. Blumenthal to forward them a copy of the email with the attachment.  The bank also opened a fraud investigation and then confirmed that no wire was forthcoming, the letter was clearly a forgery.

33.     A call was placed to Mr. Anselmo by Mr. Blumenthal to inform him of the events of the day, Mr. Anselmo indicated he would handle the situation and in a series of text messages confirmed that he would resolve the problem and tender all funds due and owing including the additional monies for Mr. Blumenthal's lost opportunity and bank charges resulting from the bounced checks. This all took place on October 29, 2007.

34.     On October 30th, 2007 by text message Mr. Anselmo sent the tracking numbers for the courier package supposedly containing the checks in full payment of the debt. A copy of the Shipment Receipt was faxed to Mr. Blumenthal as well, indicating delivery for October 31st, 2007.

35.     On October 31st no package arrived.  A call immediately went out to Mr. Anselmo seeking an explanation and demanding payment. Mr. Anselmo said *"...he would investigate."* A short time later Mr. Anselmo said that the package got delayed

and would arrive the next day.

36.      The next day a courier package arrived but it contained only promotional materials, and no checks. Mr. Anselmo was again contacted demanding payment and he explained that *"...his office had sent out 3 courier packages that day and that the checks must have been sent to someone else."* Mr. Anselmo said he would find the checks and call back.

37.      Later that day Mr. Anselmo said the checks had been located and he was having them sent to his office from *"California"* and that when package *"...ships they provide the number which then gets shared with you".*

38.      On November 2, 2007 Mr. Anselmo sent another text message which read as follows:

> *"Package sent 2nd day air..which means it gets to my office mon. I am going to have a employee fly it out here..I am going to stay here until I get it....and"*

the next text message read:

> *"Then bring it to you in person or you can come and get it from me. I need this done...let me know your schedule for mon afternoon"*

39.      On November 5th, 2007 the following text was received:

> *"On flight 6079 arrives at 4. He will text you and can meet you anywere. He is going to stay the night now and get some other*

10

*business done"*

40.    In several subsequent text messages that same day Mr. Anselmo said that the flight had been delayed several times, that an alternative flight reservation was made for the messenger on an different carrier, and that flight would arrive at O'HARE airport at 8:40 pm. At 9:38 pm Mr. Blumenthal sent the following text message to Mr. Anselmo:

> *"Not looking good. Heard nothing plane landed 1 hour ago. Need*
>
> *to hear from u NOW!"*

Another text message was sent out at 10:26 pm that night by Mr. Blumenthal who had still heard nothing from Mr. Anselmo or the messenger asking about the whereabouts of the messenger and the check.  No response was received that evening.

41.    The following morning Mr. Anselmo sent the following text message to Mr. Blumenthal:

> *"Plane landed on time but did not get rental car until almost 11.*
>
> *He checked into his hotel and will drop check at your office"*

42.    At 4:19pm November 6th, 2007 the following text message exchange took place:

> Anselmo: *"The car is at ashland and belmont heading south....if*
>
> *you want him to devert give me the address"*
>
> Blumenthal: *"No let him go to office"*
>
> Anselmo: *"ok"*

> Blumenthal: *"have him call 960-1990 and dave will come right*
>
> *down to get envelope"*
>
> Anselmo: *"What area code"*
>
> Blumenthal: *"312"*
>
> Blumenthal (5:39pm): *"What's going on. Need to know right*
>
> *NOW!"*
>
> Blumenthal: *" I have made someone stay late just for this"*
>
> Blumenthal: *"give me ur employees number"*

43.     Finally in frustration Mr. Blumenthal placed a telephone call to Mr. Anselmo just before 6:00pm November 6th, 2007 and was told *"...Corey was only a few blocks from (Mr. Blumenthal's) office and on his way to immediately deliver the checks"* and then nothing further was heard from Corey or Mr. Anselmo that day and further efforts to contact them were unsuccessful.

44.     Mr. Blumenthal then contacted Dr. Vicari who sent the following text message to Mr. Blumenthal at 6:01pm November 6th, 2007:

> *"Finishing up. Ill call in an hour. Corey is apparently on his way*
>
> *to my house. Mattys attorney wants to talk to me. Details to*
>
> *follow. All this new to me."*

At 8:00 p.m. a further text message was received which read as follows:

> *"Yes, corey coming over after 9:30, I have to go out until then. I*
>
> *spoke with Matts attny. Matty coming back tomorrow to sign*

12

> *necessary papers. Im in middle of hospital emergency - not of my*
>
> *doing - I will still call with detail as soon as I get it straightened*
>
> *out."*

And then at 11:39 p.m. the following text was received by Mr. Blumenthal from Dr. Vicari:

> *"Stuck at hospital. I am meeting Matty and corey after my surgery*
>
> *in a.m.  And we are going straight to bank."*

Needless to say neither Mr. Anselmo or the checks arrived as indicated in the text message.

45.    At some point around this time Dr. Vicari advised Mr. Blumenthal that he had spoken to Mr. Anselmo and that he claimed to have been arrested by IRS agents when he got off the plane in Chicago.  Mr. Anselmo claimed to have been detained all night until he was able to get in touch with his Uncle. His Uncle allegedly recommended an attorney who helped coordinate Mr. Anselmo's release from custody the following morning.

46.    Mr. Blumenthal tried to reach Mr. Anselmo and finally got a hold of him by telephone just before he was supposedly boarding a plane back to Omaha, still without having tendered payment or making arrangements to do so.  Mr. Anselmo explained that he was *"exhausted"* from his ordeal,  was going home and, after speaking to his Attorney upon his return to Omaha, would contact Mr. Blumenthal again to arrange payment.

13

47.     Mr. Blumenthal eventually learned that Mr. Anselmo had not in fact spoken to his Uncle and was unable to verify that any legal action had been taken against Mr. Anselmo. Mr. Anselmo has continually refused to provide the name of any criminal lawyer handling any matters for him and continues to refuse to tender payment in spite of repeated and continuing demands.

48.     By this time Mr. Anselmo had offered and agreed to pay Mr. Blumenthal the sum of Two Million One Hundred Thirty-one Thousand Three Hundred Dollars. He confirmed this amount was due and owing in a conversation with Dr. Vicari and authorized Dr. Vicari to segregate that amount from the funds he had promised to deliver to Dr. Vicari at this time.

49.     On or about November 12, 2007 a telephone call took place between Mr. Blumenthal and Kathryn Hemenway.   Ms. Hemenway claimed to be Mr. Anselmo's attorney and tax accountant. Mr. Blumenthal described to her the history of the debt and the lawsuit planned on filing in the next few days.

50.     Ms. Hemenway requested Mr. Blumenthal delay taking further action. Mr. Blumenthal agreed to hold off taking legal action only if: (1) Ms. Hemenway was to take charge of the matter, (2) personally guaranteed that the Twelve Million Dollar cashiers check Mr. Anselmo claimed to have in his possession from US Bancorp payable to Defendants was verified by her as deposited,  and (3) she personally verified that a wire for the sums due and owing Mr. Blumenthal was authorized by Mr. Anselmo, communicated to the appropriate Bank personnel and was guaranteed to be sent as

14

soon as the check for Twelve Million Dollars cleared.

51.    Ms. Hemenway agreed to do all these things, and confirmed that these things were done by her in a series of faxes sent on November 12th, 20th and 26th, 2007.

52.    Contrary to Ms. Hemenway's representations, to date no funds have been received by Mr. Blumenthal and the debt remains unpaid.

53.    After not receiving the promised wires by Mr. Anselmo and Ms. Hemenway in the faxes, Mr. Blumenthal contacted Dr. Vicari to see if he had any new information. Dr. Vicari sent the following text message to Mr. Blumenthal at 11:44am Nov. 30th, 2007:

> *"Talked to Matt he swears money left his acct and as soon as bank releases it we will be done. Nothing more he knows to do. I can't verify, but that was the"*

54.    In the period since November 26th, 2007, Mr. Anselmo, in response to continuing demands, has repeatedly promised to tender the funds due and owing and has in fact agreed to pay the total sum of Two Million Two Hundred Thousand Dollars to Mr. Blumenthal. This was initially communicated to Mr. Blumenthal by way of a voicemail from Kathryn Hemenway and later confirmed personally by Mr. Anselmo in a telephone conversation with Mr. Blumenthal.

55.    On several more occasions in December 2007 Mr. Anselmo has stated that he sent out the checks, wired the money, was waiting for *"government approval"* to send the money, had received approval, then was still waiting for approval, needed tax

ID information from Mr. Blumenthal (which was immediately provided) before the funds could be released and other excuses too numerous to recount, however, to date no funds have been received, and the sum of Two Million Two Hundred Thousand Dollars remains unpaid, due and owing by Anselmo and M&M Marketing, L.L.C.

## COUNT I-Monies Due and Owing
## DEFENDANTS - ANSELMO and M&M Marketing, L.L.C.

56.    Plaintiff, MICHAEL BLUMENTHAL, incorporates by reference as though fully set forth herein, the allegations of paragraphs 1 through 55 inclusive of this Complaint at Law as the allegations of paragraphs 1 through 55 of this Count I and further states:

57.    Michael Blumenthal has done and performed all things required of him to be performed under the terms of the agreement between the parties.

58.    Plaintiff Michael L. Blumenthal has repeatedly demanded the tender of all sums due.

59.    Defendants Matthew H. Anselmo and M&M MARKETING, L.L.C., have repeatedly promised to pay the sum of Two Million Two Hundred Thousand Dollars, but to date have not paid and said sum remains due and owing to Plaintiff.

**WHEREFORE**, Plaintiff, MICHAEL L. BLUMENTHAL, prays for the entry of judgment against Defendants, Matthew H. Anselmo and M&M MARKETING, L.L.C. in the sum of Two Million Two Hundred Thousand Dollars plus interest and costs and for

such other and further relief as this court deems just and proper.

## COUNT II - UNJUST ENRICHMENT
### DEFENDANTS - ANSELMO and M&M Marketing, L.L.C.

60.      Plaintiff, MICHAEL BLUMENTHAL, incorporates by reference as
though fully set forth herein, the allegations of paragraphs 1 through 55 inclusive of this
Complaint at Law as the allegations of paragraphs 1 through 55 of this Count II and
further states:

61.      Defendants Matthew Anselmo and M&M MARKETING, L.L.C., have
diverted the sums due Plaintiff from the two business deals he participated in, to other
business deals and new ventures which have come to and been accepted by Defendants,
and/or has been used by defendants for other purposes to which Plaintiff did not agree.

62.      Defendants failure to timely repay the monies due and owing Plaintiff and
their sending checks to Plaintiff from an account with insufficient funds constitutes theft
under Illinois law.

63.      But for Defendants' unlawful retention of Plaintiff's money Defendants'
would not have had the opportunity to profit from these other business opportunities
or embark on new ventures and profit therefrom.

64.      That as a direct and proximate result of the above-described acts by
Defendants, Matthew Anselmo and M&M MARKETING, L.L.C. and their acceptance,
use and/or retention of Plaintiff's money, said Defendants have been unjustly enriched

17

in an amount in excess of TWO MILLION TWO HUNDRED THOUSAND DOLLARS.

**WHEREFORE**, Plaintiff, MICHAEL L. BLUMENTHAL, prays for the entry of judgment against Defendants, Matthew H. Anselmo and M&M MARKETING, L.L.C. in an amount in excess sum of Two Million Two Hundred Thousand Dollars and equal to the amount defendants have been unjustly enriched or the value of the actual benefits or profits received by defendants plus interest and costs and Plaintiff also prays for the imposition of a constructive trust on the assets of Matthew H. Anselmo and M&M MARKETING, L.L.C., and for such other and further relief as this court deems just and proper.

**COUNT III- CONVERSION**
**DEFENDANTS - ANSELMO and M&M Marketing, L.L.C.**

65.    Plaintiff, MICHAEL BLUMENTHAL, incorporates by reference as though fully set forth herein, the allegations of paragraphs 1 through 55 and 57 inclusive of this Complaint at Law as the allegations of paragraphs 1 through 55 and 57 of this Count III and further states:

66.    Plaintiff lent defendants money that was wholly his own.

67.    Plaintiff has an absolute right to his funds based upon the agreement made with the Defendants. That agreement required repayment on or before June 6, 2007.

68.    As detailed in paragraphs 16, 17, 20, 21, 30, 31, 35, 36, 47, 54 and 55, Plaintiff has repeatedly demanded, and continues to demand, return of his money.

18

69.     Defendants have since June 6th, 2007 wrongfully, wilfully and without Plaintiff's permission or authorization assumed control and dominion over Plaintiff's property in their failure to return the monies demanded and owed.

**WHEREFORE**, Plaintiff, MICHAEL L. BLUMENTHAL, prays for the entry of judgment against Defendants, Matthew H. Anselmo and M&M MARKETING, L.L.C. in an amount in excess sum of Two Million Two Hundred Thousand Dollars, plus punitive damages and court costs and for such other and further relief as this court deems just and proper.

### COUNT IV-FRAUD
### DEFENDANTS - ANSELMO and M&M Marketing, L.L.C.

70.     Plaintiff, MICHAEL BLUMENTHAL, incorporates by reference as though fully set forth herein, the allegations of paragraphs 1 through 55 inclusive of this Complaint at Law as the allegations of paragraphs 1 through 55 of this Count IV and further states:

71.     Based on all the information known to Plaintiff, it is clear that Defendants misrepresented their original reason for needing Plaintiff's money and misrepresented their ability and/or their intention to repay the money provided by Plaintiff.

72.     Based on Defendants' misrepresentations as set forth in paragraphs 7 - 55 inclusive, and their actions since June 6th, 2007, it is also clear that Defendants knew at the time that they made the misrepresentations that they had no intention of repaying the Plaintiff as promised, if at all.

19

73.    Defendants' misrepresented the facts of the transactions he needed Plaintiff's funds for with the intent to impress Plaintiff and induce him to provide the funds requested.

74.    Defendant utilized and played upon the close family relationship which existed between Plaintiff and other members of Defendant ANSELMO's family, specifically, Dr. Vicari, to further induce Plaintiff into providing the funds.

75.    The Plaintiff, in reliance upon the Defendants' false representations, believing them to be true, provided the funds requested to Plaintiff's detriment.

76.    As a direct and proximate cause of the foregoing fraudulent acts by the Defendants', Plaintiff was injured and sustained damages including but not limited to: loss of his original investment, the loss of other business opportunities, interest, bank charges for the dishonored checks and damage to his reputation.

**WHEREFORE**, Plaintiff, MICHAEL L. BLUMENTHAL, prays for the entry of judgment against Defendants, Matthew H. Anselmo and M&M MARKETING, L.L.C. in an amount in excess sum of Two Million Two Hundred Thousand Dollars, plus punitive damages, court costs and for such other and further relief as this court deems just and proper.

### COUNT V-Promissory Estoppel
### DEFENDANT HEMENWAY

77.    Plaintiff, MICHAEL BLUMENTHAL, incorporates by reference as though fully set forth herein, the allegations of paragraphs 1 through 55 inclusive of this Complaint at Law as the allegations of paragraphs 1 through 55 of this Count V and

further states:

78.    Defendant Kathryn Hemenway is an attorney licensed to practice law in

the state of Nebraska, with offices at 2543 S. 153rd Circle, Omaha, Nebraska 68137.

79.    Defendant Hemenway represented herself as the tax accountant and

attorney for defendant.

80.    In November of 2007, Hemenway told Mr. Blumenthal that she helped

Anselmo and M&M MARKETING, L.L.C deposit the approximate sum of Twelve

Million Dollars into an account in the name of M&M Marketing, L.L.C. at Wells Fargo

Bank. These funds were allegedly from Mr. Anselmo and M&M Marketing, L.L.C.'s

account at US Bancorp which the bank closed in response to the investigation it

conducted as discussed in paragraphs 30, 31 and 32 above.

81.    In response to Mr. Blumenthal's concerns regarding his getting his

money from defendants Anselmo and M&M Marketing, L.L.C. and to Mr. Blumenthal's

indications that he was going to pursue immediate legal action, Ms. Hemenway asked

Mr. Blumenthal *"to hold off on any legal action while the check clears and that she would

insure that Mr. Blumenthal was paid form those funds."*

82.    Mr. Blumenthal indicated that he would only agree to hold off pursuing

legal action if Ms. HEMENWAY personally verified and insured that the Twelve

Million Dollar check existed, was valid, was deposited and that once it cleared that a

wire for the monies owed to Mr. Blumenthal was preauthorized to be to sent out.

83.    Mr. Blumenthal informed Ms. Hemenway  that he did not trust or

believe Mr. Anselmo. Mr. Blumenthal went on to state to Ms. Hemenway that he would not accept his word on anything, and that it was only based on Ms. Hemenway's personal representations, that Mr. Blumenthal was holding off taking any legal action.

84.     Ms. Hemenway then sent out three faxes confirming the foregoing, as set out in paragraphs 49, 50 and 51. Mr. Blumenthal relied upon Ms. Hemenway's representations and statements in the three faxes.

85.     On November 27th, 2007 Ms. Hemenway left the following voicemail on Mr. Blumenthal's telephone:

> "Hi, Mr. Blumenthal.  I have verified that the money is
> physically out of the M&M Marketing account. It's in
> process.  I do not know what's causing this. I spoke with the
> branch manager. They said that sometimes they are subject
> to review, but it has been moved out of M&M Marketing's
> account and instead of the Two point One whatever, He's
> actually transferring or wiring Two Million Two Hundred
> Thousand, to hopefully make up for any interest that may
> have accrued.  It has been gone, it's gone, it's out and I will
> talk to you tomorrow. I am sorry I did get back to at this late
> of a time. Again, this is Kate, Kathryn Hemenway. Thank
> you."

86.     Mr. Blumenthal's reliance was expected and anticipated by Ms.

Hemenway, and was reasonably foreseeable by her.

87.      Mr. Blumenthal in reliance on Ms. Hemenway's representations has

been injured and sustained damages because the monies which existed have been

diverted and not sent to Plaintiff. Plaintiff has also been damaged in the loss of the use

of the funds.

**WHEREFORE**, Plaintiff, MICHAEL L. BLUMENTHAL, prays for the entry of

judgment against Defendant KATHRYN HEMENWAY in an amount in excess sum of

Two Million Two Hundred Thousand Dollars plus pre and post judgment interest,

court costs  and for such other and further relief as this court deems just and proper.

## COUNT VI-BREACH OF CONTRACT In the alternative
## DEFENDANT HEMENWAY

88.     Plaintiff, MICHAEL BLUMENTHAL, incorporates by reference as though

fully set forth herein, the allegations of paragraphs 1 through 55 and 77 to 87 inclusive

of this Complaint at Law as the allegations of paragraphs 1 through 55 and 77-87 of this

Count VI and further states:

89.      In the alternative to Plaintiff's promissory estoppel claim against

Defendant Hemenway Plaintiff asserts herein a claim for breach of contract.

90.      On information and belief,  Ms. Hemenway received consideration in the

form of increased billings, monies and goodwill from Defendants Anselmo and M&M

Marketing, L.L.C. by convincing Mr. Blumenthal to delay taking legal action.

**WHEREFORE**, Plaintiff, MICHAEL L. BLUMENTHAL, prays for the entry of

23

judgment against Defendant KATHRYN HEMENWAY in an amount in excess of the

sum of Two Million Two Hundred Thousand Dollars, plus pre and post judgment

interest, court costs and for such other and further relief as this court deems just and

proper.

Respectfully submitted,

**MICHAEL L. BLUMENTHAL, Plaintiff**


BY:   /S/    Michael L. Blumenthal

**MARTIN A. BLUMENTHAL, ESQ.**
**ATTORNEY FOR MICHAEL L. BLUMENTHAL**
**1 NORTHFIELD PLAZA - SUITE 300**
**NORTHFIELD, IL   60093**
**(847) 441-2687**
**ATTORNEY I.D.# 6180069**

**MICHAEL L. BLUMENTHAL, ESQ.**
**MILTON M. BLUMENTHAL & ASSOCIATES**
**77 WEST WASHINGTON STREET  - SUITE 1720**
**CHICAGO, ILLINOIS 60602**
**(312) 372-3566**
**ATTORNEY I.D. # 6183007**

**mike**

| | |
|---|---|
| **From:** | Frank Vicari [frank@vicari.com] |
| **Sent:** | Wednesday, October 24, 2007 10:52 PM |
| **To:** | Mike Blumenthal |
| **Subject:** | FW: banking information |
| **Attachments:** | U.S. Bank Doc-Int.Sec.wps |

---

**From:** matthew [mailto:matty441@yahoo.com]
**Sent:** Wed 10/24/2007 9:51 PM
**To:** Frank Vicari
**Subject:** Re: banking information

There is no problem...I am sorry I put you in this situation....The tracking numbers that they provided me are as follows 946878145 and 949376789. I have included the e-mail attachment that I got from my bank...I am positive after speaking with everyone under the sun that this was held up because of the amount and it will be in his account by tommorow afternoon...The branch manager told me it would be in there by 3 p.m. and that this is not out of the norm. I will call Mike tommorow from the bank and have him speak with the manager to make sure there are no problems at 3:30. I tried e-mailing you this from my phone and it did not realize that it did not go through!
Matty

*Frank Vicari <frank@vicari.com>* wrote:



**Matthew Anselmo**
**M&M Marketing**
**1-800-673-5935**
**402-597-2285**
**www.freegolfer.com**
**11329 P Street Omaha, NE 68136**

_____

Do You Yahoo!?
Tired of spam? Yahoo! Mail has the best spam protection around
http://mail.yahoo.com

**Exhibit A**



Corporate Headquarters
U.S. Bancorp
U.S. Bancorp Center
800 Nicollet Mall
Minneapolis, MN 55402


**To: M&M Marketing**

**From: Internal Security**

**Date: October 24, 2007**

**Subject: Wire Transfer for Mr. Vicari & Mr. Blumenthal**


Mr. Anselmo,
As you requested two wire transfers were processed from M&M Marketing's Money Market Account on October 23, 2007, at 3:42 p.m. to a Mr. Frank Vicari and Mr. Mike Blumenthal. You were informed that the wire transfers would be processed the following day because of the U.S. Bank cut off time. You requested that tracking information be provided for both of these transactions which was provided to you. You were also informed that the bank has the right to review transactions and must do so because of certain safe guards that are in place for U.S. Bank and the safety of our customers. Today at approximately 2:15 p.m. you entered your branch located in Omaha and requested to speak with the branch manager. You were again informed that your wire transfer was processed but the transaction was being reviewed. We request your patients in this matter and understanding that these safe guards are in place for everyone's benefit. Your wire transfer will finish being reviewed and processed on October 25, 2007. We appreciate your business and feel free to contact Jackie Morgan at your U.S. Bank branch to confirm these transactions and for any future banking needs you may have.


**334557:457541314**

EXHIBIT A pg.2