**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL L. BLUMENTHAL, | ) | |
| | ) | |
| Plaintiff, | ) | **Court No.   07 C  7230** |
| vs. | ) | |
| | ) | |
| MATTHEW H. ANSELMO, | ) | **Judge Joan B. Gottschall** |
| M & M MARKETING, L.L.C., and | ) | |
| KATHRYN HEMENWAY, | ) | |
| | ) | **Magistrate Michael T. Mason** |
| Defendants. | ) | |
| | ) | |

### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Now comes the Plaintiff, MICHAEL L. BLUMENTHAL, and respectfully moves this

Honorable  Court for the entry of a Preliminary Injunction against the Defendants,

MATTHEW H. ANSELMO and M & M MARKETING, L.L.C., and in support hereof

respectfully represents as follows:

### BACKGROUND

1.    This action arise out of a loan of money made by Plaintiff to Defendants Anselmo

and M & M Marketing, L.L.C. in May of 2007. Defendants were to repay these funds in early

June 2007. The Defendants failed to do so. The Complaint in this matter was filed on December

26, 2007, a copy of which is attached hereto and made a part hereof and marked Exhibit "1".

2.    Personal service was had upon Defendants Anselmo and M & M Marketing on

January 4 , 2008 and is so reflected on this Court's docket. See Exhibits "2" and "3" respectively.

3.      Based on the Defendants' failure to appear within the time allowed, Plaintiff filed a motion for an order of default and for the entry of a default judgment on January 28, 2008.

4.      On January 31, 2008, Judge Gottschall held a hearing on Plaintiff's motion for default and for the entry of default judgment.   At the conclusion of the hearing Judge Gottschall found Defendants Anselmo and M & M Marketing in default and entered a default judgment against them and in favor of Plaintiff in the sum of Two Million Two Hundred Thousand ($2,200,000.00) Dollars, plus prejudgment interest at nine (9%) percent. A copy of the order and Final Judgment is attached hereto and made a part hereof and marked Exhibit "4".

5.      On the same day, Judge Gottschall entered a ten (10) day Temporary Restraining Order against the Defendants Anselmo and M & M Marketing prohibiting them from transferring any monies outside the continental United States.  (See Exhibit "4".)

6.      Subsequently, Defendants file a motion for a continuance. Even though Defendant Anselmo failed to appear as promised, Judge Gottschall generously gave Defendant Anselmo fourteen (14) days to hire an attorney and file an appearance. (See Exhibit "5"  attached hereto and made a part hereof.) Defendants Anselmo and M&M Marketing have not filed an appearance or sought another continuance.

7.      On February 14, 2008 the Court extended that Temporary Restraining Order for an additional ten (10) business days, through and including February 29, 2008.  (See Exhibit "6").

8.     At the Status hearing on February 14, 2008 the Court suggested that Plaintiff seek to have the Temporary Restraining Order made permanent to prevent Defendants from benefitting further from the Court's largess by dissipating any assets or transferring any assets during the same period, since Plaintiff was told to hold off on any collection action during the extension period granted by the Court. Judge Gottschall indicated that she would and subsequently did, refer the motion to this Honorable Court for further proceedings on this issue.

9.     On February 21, 2008 this Honorable Court set a hearing date of February 25, 2008 at 10:00 a.m. on Plaintiff's oral Motion for Preliminary Injunction. This Court directed Plaintiff to file a written by 2:00 p.m. Friday, February, 22, 2008 and further directed Plaintiff to send a copy of the order to all Defendants immediately. Accordingly, a copy of the docket entry setting this matter for hearing was transmitted via facsimile to Defendants Hemenway, Anselmo and M & M Marketing, L.L.C., on Thursday, February 21, 2008 at 11:05 a.m. and 11:06 a.m., respectively.  Copies of the facsimile confirmation sheets are attached hereto and made a part hereof as Exhibits "7" and "8".

## ADDITIONAL FACTS

As set out in paragraph 3 of Plaintiff Declaration of February 22, 2008, Defendant Anselmo has recently purchased controlling interest in a  foreign corporation located in a known tax haven outside the jurisdiction of the United States of America, and beyond the reach of these courts.  It is Plaintiff's understanding based on conversations with Defendant Anselmo, that Defendants intend to divert funds  earned from the sale of their products to this

3

offshore foreign corporation. These funds would then be beyond the reach or ability of Plaintiff to attach through standard judicial means. Defendants Anselmo and M & M Marketing would thereby be making themselves appear insolvent on paper to anyone attempting to collect on a judgment including Plaintiff, to Plaintiff's detriment and harm. This scheme would deprive Plaintiff of access to funds sufficient to satisfy the current judgment, as well as any additional awards which may be entered based on the remaining counts of Plaintiff's Complaint.

Defendants have engaged in a calculated effort over the last 8 ½ months to delay repayment as demonstrated in the Complaint. Defendants clearly used the time to protect themselves since they are evidently not concerned about the pending suit or judgment, as evidenced by their failure to appear and defend. Since the filing of this action Defendants have steadfastly refused to offer any reasonable explanation for their nonpayment or appear and defend themselves. It is reasonable to conclude therefore, that the Defendants have no intention of repaying their debt or satisfying the judgment. Yet, Defendants seem to have plenty of resources to start new businesses. Defendants have, since failing to repay the debt to Plaintiff, started a new clothing line business. The clothes are manufactured overseas and sold at various Ultimate Fighting Championship events around the United States. Plaintiff reasonably believes that the earnings generated by this endeavor are also being diverted to the offshore company in an effort to prevent the Plaintiff from collecting on his judgment.

Defendants Anselmo and M & M Marketing also embarked on a business to sponsor and promote ultimate fighters who fight in the Ultimate Fighting Championship events. This

4

activity is part of a promotional and marketing tool related to Defendant's new clothing line. It is Plaintiff's believe that these new businesses have been funded in large part with Plaintiff's unpaid monies and loans Defendants claimed to have taken out while in New York City within the past few months. The fact that Defendants claimed to have needed to borrow money to support these new ventures suggests that they are working to make themselves insolvent in order to avoid repayment.

As set forth in Plaintiff's Complaint, and as verified by Co-Defendant Hemenway in numerous facsimiles she sent to Plaintiff (See Exhibit "9"), Defendants Anselmo and M & M Marketing had the monies to pay the judgment entered on January 31, 2008, but have unreasonably failed to do so. Based on Defendant Hemenway's representations in court on February 21, 2008, Defendants Anselmo and M&M Marketing reneged on a "settlement agreement" to repay Plaintiff's money in late November 2007. At the time Defendant Hemenway represented Defendants Anselmo and M&M Marketing had the monies to repay Plaintiff. The only reasonable conclusion that can drawn from the facts is that Defendants believe they are now judgment proof. In order to prevent further efforts to dissipate or transfer assets, Plaintiff is seeking an injunction.

## ARGUMENT

A party seeking a preliminary injunction must demonstrate that:

(1)    It has a reasonable likelihood of success on the merits;

(2)    It has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied;

    (3)    The balance of relative harm weighs in the movant's favor;

    (4)    The public interest will not be harmed if the injunction issues.

*Club Gene & Georgetti Limited Partnership, an Illinois Limited Partnership, Plaintiff v. La Luna Enterprises, Inc., an Illinois corporation, d/b/a Erie Café, E.J. Lenzi, an Individual, and Toni Lenzi, an Individual, Defendants, 889 F. Supp.324, 325 (U.S.Dist. Ct. 1995); Canfield Co. V. Vess Beverages, Inc., 796 F.2nd 903, 906* (7th Cir. 1986) (citation omitted); *Abott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 11-12 (7th Cir. 1992).*

The first element, likelihood of success on the merits, is satisfied in this case since Plaintiff already has a final judgment against the Defendants Anselmo and M & M Marketing. The judgment, entered after notice and hearing, is the best evidence that Plaintiff can offer regarding this element of proof.  This position is reinforced by the fact that the record reflects that Judge Gottschall informed Defendants, on the single occasion they contacted the court, that the order and judgment had been entered and explained clearly the steps necessary to rectify the situation. The Defendants Anselmo and M&M Marketing have chosen to ignore the notice, advice and warning provided by Judge Gottschall. If Defendants had a valid defense presumably they would have raised it by now. Under these facts it is respectfully submitted, that the first element has been met.

Since this action involves, at its most basic level, a breach of contract, the natural remedy is money damages. This case is no exception. Plaintiff has sought and obtained a judgment  only for money damages.  In these circumstances, the second element that the court

must consider, that there exists no adequate remedy at law or that movant will suffer

irreparable harm, merge.  The question for the court to then consider is whether the Plaintiff

will be made whole if he prevails on the merits, is awarded damages and tries to collect. A

money damage award remedy may still be considered inadequate for any one of four reasons.

In this case only one of the four reasons usually cited for the entry of a preliminary injunction

is offered in support of the second element, and to-wit: that damages may be unobtainable

from the Defendant because he may become, purposefully or unintentionally, insolvent before

a final judgment can be entered and or collected.  *See* *Signode Corp. V. Weld-Loc Systems, Inc.,*

700 F.2d 1108, 1111 (7th Cir. 1983).  Plaintiff herein has alleged, and has supported his

allegations with his Declaration, that the Defendants have purchased a foreign corporation in a

know tax haven jurisdiction, beyond the reach of the courts of the United States of America,

with the intention of diverting future income and current funds to this foreign company, in

order to deprive Plaintiff of his ability to collect his final judgment.  Defendant has continually

engaged in an effort to frustrate Plaintiff's efforts to collect the monies due and owing as more

fully set forth in Plaintiff's Complaint, in order to buy sufficient time to dissipate, hide and

conceal his assets.  In furtherance of his efforts, it is Plaintiff's contention that, Defendant

Anselmo engaged the services of Co-Defendant Hemenway to further add to the time he had

to hide or dissipate his assets due to her failure to actually perform the promises and

representations made by her.  Defendant Anselmo presumably has used that time well.

Defendants Anselmo and M&M Marketing have started a new business selling a line of

clothing marketed toward fans of the Ultimate Fighting Championship. In order to help gain

7

visibility for their new clothing line, Defendant Anselmo and M & M Marketing have sponsored fighters in many UFC contests in the last six (6) months. It is Plaintiff's understanding and belief that the profits from these endeavors, as well as those of their original business, are diverted to Defendants offshore company in order to keep them out of the reach of Plaintiff and his efforts to satisfy the outstanding judgment which currently sits at $2,343,753.42 (as of February 25, 2008).

Regarding the third and fourth elements, Plaintiff has a final judgment which Defendant Anselmo has been avoiding. Plaintiff is seeking merely to prevent the Defendant from continuing to dissipate, transfer or hiding his assets so that Plaintiff will be able to collect on his judgment. While arguably some harm to Defendants will result from the entry of this injunction, this is not the type of harm contemplated to be protected when a court weighs the merits of each parties position in considering  a request for a preliminary injunction.  The relief Plaintiff seeks here is the minimum protection necessary to prevent further harm to Plaintiff and allow him to collect his judgment. The requested relief does not hinder, hamper or interfere with Defendants or the businesses they run in an unreasonable or unnecessary manner beyond that required to protect Plaintiff and satisfy the outstanding judgment. The relative merits of the parties on this issue favor the granting of Plaintiff's request.

The final element, harm to the public interest, also favors the entry of a preliminary injunction. There is no public interest issue touched upon or affected by Plaintiff in his request for relief. This matter is a simple debtor-creditor scenario with no public interest component. Plaintiff's current motion merely seeks to enjoin the Defendants from further dissipating their

8

assets in an effort to become insolvent, allowing Plaintiff an opportunity to recover his property.

Specifically, Plaintiff seeks to:

1)      Enjoin and prohibit the Defendants from transferring any of their assets outside of the United States.

2)      Enjoin and prohibit the Defendants from transferring or selling any stock they may own or control in any public, private or closely held companies pending satisfaction of the judgment;

3)      Bar the Defendants from entering into or making any extraordinary or unusual business transfers or paying any extraordinary or unusual business expenses without prior leave of court, until Plaintiff's judgment has been satisfied;

4)      Require Defendants to identify, in writing directed to Plaintiff, specifically and in detail where the Defendants' funds, which were previously on deposit with U.S. Bank in September/October 2007, were transferred to or how they were spent or otherwise disposed of within forty-eight (48) hours.

5)      Obtain an order from this court requiring the Defendants to repatriate sufficient funds to satisfy their outstanding liability to Plaintiff within seven (7) days and identify, in writing directed to Plaintiff, the location of said funds.

6)      Obtain an order from this court requiring the Defendants to identify, in writing directed to Plaintiff, all bank accounts which they have anywhere in the world, in their name or under their direction and control, directly or indirectly within forty-eight (48) hours;

9

7)      Obtain an order from this court requiring Defendants to provide Plaintiff, in writing, with a list of all tangible assets located anywhere in the world which are owned or controlled directly or indirectly by them within forty-eight (48) hours;

8)      Obtain an order from this court requiring Defendants to provide Plaintiff with a written list of any and all third parties to whom transfers of tangible assets have already been made since June 6, 2007 or who hold property or assets of the Defendants within forty-eight (48) hours;

9)      Obtain an order requiring the Defendants to identify, in writing directed to Plaintiff, where the supposed $12,000,000.00 check was deposited and further identify, in writing directed to Plaintiff,  in detail where and how those funds have been spent or otherwise disposed of within forty-eight (48) hours  specifically including the name, address and telephone numbers of any and all entities and/or individuals who received or who control any of the funds from that check.

10)     Obtain an order barring the defendants from further encumbering any assets or from taking on a new debt until Plaintiff's judgment has been fully satisfied.

Finally, Plaintiff requests that the Court waive the security that Rule 65(c) of the Federal Rules of Civil Procedure requires  suggest or in the alternative require a $1.00 security payable on further order of Court to the Clerk of the Court.  "Under appropriate circumstances bond may be excused, not-withstanding the literal language of Rule 65(c)." *Wayne Chemical, Inc. V. Columbus Agency Service Corp., 567 F.2d 692, 701 (7th Circ. 1977) (*citing  Scherr v. Volpe, 466 F.2d 1027, 1035 (7th Cir. 1972) (1977 CA7). "Since the amount of the security rests within the

discretion of the district judge, the matter of requiring a security in the first instance was recognized in *Urbain* as also resting within the discretion of the district judge." *Scherr v. Volpe, 466 F.2d 1027, 1035 (7th Cir. 1972) (1977 CA7)*(citing Urbain v. Knapp Brothers Mfg. Co., 217 F.2d 810, 815 (6th Cir., 1954). Considering the fact that a final judgment of over $2,000,000.00 is capable of being executed on, it is respectfully submitted that the purposes of requiring a security are not relevant in this case. Plaintiff has already prevailed, whatever harm the security requirement seeks to prevent is already decided in Plaintiff's favor.

WHEREFORE, plaintiff, MICHAEL L. BLUMENTHAL, prays this Honorable Court enter a preliminary injunction against the Defendants, MATTHEW H. ANSELMO and M & M MARKETING, L.L.C., jointly and individually, and anyone else with notice and knowledge acting in concert with them, which:

A.    Prohibits the Defendants from transferring any of their assets outside of the continental United States.

B.    Prohibits the Defendants from transferring or selling any stock they may own in any public, private or closely held companies until Plaintiff's judgment is satisfied;

C.    Prohibits the Defendants from making or engaging in any extraordinary or unusual business transfers or pay any extraordinary or unusual business expenses until Plaintiff's judgment has been satisfied;

D.    Require the Defendants to identify, and provide, in writing directed to Plaintiff, specifically and in detail where the funds of the Defendants which were on deposit with U.S. Bank in September/October 2007 were transferred to or how they were spent or otherwise

11

disposed of within forty-eight (48) hours of the entry of this motion and order.

  D.  Requiring and directing the Defendants to repatriate sufficient funds to satisfy their outstanding liability to Plaintiff within seven (7) days and identify, in writing directed to Plaintiff, the location of said funds.

  E.  Requiring the Defendants to identify all bank accounts which they have anywhere in the world, wheresoever situated in their name or under their direction and control, directly or indirectly within forty-eight (48) hours in writing to Plaintiff;

  F.  Requiring the Defendants to provide Plaintiff with a list of all tangible assets wheresoever situated anywhere in the world own or controlled by Defendants directly or indirectly within forty-eight (48) hours;

  G.  Requiring and directing the Defendants to provide Plaintiff with a list of any and all third parties to whom they have transferred any property or assets since June 6, 2007 or who hold property or assets of the Defendants within forty-eight (48) hours;

  H.  Requiring the Defendants to identify, in writing directed to the Plaintiff, where the $12,000,000.00 check was deposited and further identify in detail how those funds have been spent or otherwise disposed of within forty-eight (48) hours and specifically identifying the name, address and telephone numbers of any and all entities, individuals who received any of the funds from that check.

  I.  Prohibits the Defendants from further encumbering any assets or from taking on a new debt until Plaintiff's Judgment has been fully satisfied.

And finally that no security be required of Plaintiff.

Respectfully submitted,

**MICHAEL L. BLUMENTHAL, Plaintiff**

By: _/s/   Michael L. Blumenthal_____
**One of His Attorneys**

**Martin A. Blumenthal**
**Attorney for Michael L. Blumenthal**
**1 Northfield Plaza - Suite 300**
**Northfield, Illinois   60093**
**(847) 441-2687**
**e-mail: marty@blumenthallaw.com**
**Attorney I.D.# 6180069**

**Michael L. Blumenthal, Esq.**
**Milton M. Blumenthal & Associates**
**77 West Washington Street  - Suite 1720**
**Chicago, Illinois 60602**
**(312) 372-3566**
**e-mail: mike@mmblumenthal.com**
**Attorney I.D. # 6183007**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL L. BLUMENTHAL, | ) | |
| | ) | **FILED** |
| Plaintiff, | ) | **DECEMBER 26, 2007** |
| | ) | MICHAEL W. DOBBINS |
| **vs.** | ) | CLERK, U.S. DISTRICT COURT |
| | ) Court No. | |
| MATTHEW H. ANSELMO, | ) | **PH** |
| M & M MARKETING, L.L.C., and Kathryn | ) | **07 C 7230** |
| HEMENWAY | ) | |
| | ) | |
| Defendants. | ) | **JUDGE GOTTSCHALL** |
| | | **MAGISTRATE JUDGE MASON** |

## COMPLAINT

**NOW COMES** the Plaintiff, MICHAEL L. BLUMENTHAL, by and through his

attorneys, MARTIN A. BLUMENTHAL and Michael L. Blumenthal, and for his cause of

action against the Defendants, MATTHEW H. ANSELMO, M & M MARKETING,

L.L.C. and KATHRYN M. HEMENWAY states as follows:

### Facts Common to all Counts

1.    That at all times mentioned herein, Plaintiff, MICHAEL L. BLUMENTHAL,

was an individual residing in and citizen of the state of Illinois with business offices

located at 77 West Washington Street, Suite 1720, Chicago, Illinois 60602.

2.    That at all times mentioned herein, Defendant, MATTHEW H.  ANSELMO,

was an individual citizen of the Nebraska residing at 415 Martin Drive, Belevue,

Nebraska 68005-4728 and was the owner and managing director of a full service

marketing company known as M &M MARKETING.

3.    M&M MARKETING, L.L.C. is a Nebraska Limited Liability Company

1



engaged in Marketing and sales of marketing goods and materials with its principal

place of business located at 11329 P Street Omaha, Nebraska 68137.

4.      On information and belief, KATHRYN HEMENWAY is an accountant and

attorney, residing in Nebraska with offices at 2543 S. 153rd Circle, Omaha, Nebraska

68137.

5.      Venue is proper in this Court because Plaintiff Blumenthal is a citizen of

Illinois and resides in this district, and the solicitations that lead to the transactions

giving rise to this lawsuit were directed to Plaintiff while he was within this district.

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332

because of the diversity of citizenship, Plaintiff Michael  Blumenthal is a citizen of

Illinois and resides in ILLINOIS and all Defendants are citizens of Nebraska and reside

in NEBRASKA and because the amount in controversy, exclusive of interest and costs,

exceeds the sum or value of $75,000.00

7.      On or about May 3rd, 2007, Mr. Anselmo approached Michael

Blumenthal and Dr. F.A. Vicari with a request to fund a business opportunity he and his

company M & M Marketing, L.L.C. had with Northrup Grumman Corp.  Mr. Anselmo

requested that Mr. Blumenthal and Dr. Vicari invest the combined sum of One Million

Two Hundred Thousand Dollars in exchange for a piece of the deal.

8.      Mr. Anselmo explained that M & M Marketing, L.L.C. had an order from

Northrup Grumman to provide a large number of specially embroidered shirts.

Northrup Grumman would provide the specifications for the shirts and embroidery

2

and Mr. Anselmo and his company would purchase the shirts, have the requested designs embroidered onto them and then deliver them on the date and at the place specified by Northrup Grumman. Mr. Anselmo went on to explain that he and M & M Marketing, L.L.C. *"...were short of working capital at that time and needed funds to pay his supplier and embroiderer in order to get the job."* They promised to repay the money by Labor Day 2007 plus 25%.

9.      Mr. Blumenthal and Dr. Vicari discussed the request and followed up with Mr. Anselmo on May 7th, 2007. During that conversation and a subsequent one May 10th, 2007 Mr. Anselmo promised to repay the funds regardless of the outcome of his dealings with Northrup Grumman. Based on these representations Mr. Blumenthal ultimately agreed to provide the funds to Mr. Anselmo and M & M Marketing, L.L.C.. There were several followup calls to arrange how payment would be made. Finally it was decided that Dr. Vicari would provide Three Hundred Fifteen Thousand Dollars and Mr. Blumenthal would to provide the remaining Nine Hundred Eighty-Five Thousand Dollars to defendants Anselmo and M&M Marketing, L.L.C..

10.      In accordance with his promise, and in reliance on Mr. Anselmo's individual and representative promises, Mr. Blumenthal caused the sum of Five Hundred Forty Thousand Dollars to be wired to defendant's account on May 14, 2007 and the additional sum of Four Hundred Forty-Five Thousand Dollars on May 25, 2007.

11.      After receiving word that the wires had been sent and had arrived on May 25, 2007, Mr. Anselmo called Mr. Blumenthal and explained *"... that he and M & M*

3

*Marketing had another deal and that they needed an additional Six Hundred Thousand Dollars for in order to finance that opportunity."* Mr. Anselmo further explained that *"... the other members of his family who had agreed to provide funds were not in a position to help him and then stated that if Mr. Blumenthal was willing to advance the funds that Mr. Anselmo either individually or through M & M Marketing, L.L.C. would be in a position to repay the additional Six Hundred Thousand Dollars plus the original Nine Hundred Eighty-five Thousand Dollars plus 25% on the combined total, by June 6, 2007 when the parties were already scheduled to get together."*

12.      Mr. Blumenthal told Mr. Anselmo he would consider the proposal and get back to Mr. Anselmo in short order. Mr Blumenthal then called Dr. Vicari to discuss the new proposal from Mr. Anselmo. After conferring with Dr. Vicari, Mr. Blumenthal agreed to provide the additional funds to Mr. Anselmo and M & M Marketing, L.L.C. This information was communicated to Mr. Anselmo the same day.

13.      On May 29, 2007, Mr. Blumenthal caused the additional sum of Six Hundred Thousand Dollars to be wired to the account identified by Mr. Anselmo under the name of M&M Marketing, L.L.C..

14.      On June 6, 2007 at the place and time previously agreed upon for the delivery of the funds Mr. Anselmo failed to appear. A call to him revealed that he had had difficulty with his flight and would arrive the following day.

15.      On June 7, 2007 Mr. Anselmo arrived at the agreed upon location but without the promised funds. Mr Anselmo requested an additional ten (10) day period

4

of time from Mr. Blumenthal in order to repay the debt, to which Mr. Blumenthal agreed.

16.    On June 19, 2007, the next date for payment, Mr. Anselmo again failed to provide the funds due.  Mr. Blumenthal made a demand for the funds, and was told there would be an additional delay of an unspecified period of time.

17.    Telephone calls demanding payment were made to Mr. Anselmo on June 22nd, 25th, 27th, July 2nd and 3rd, 2007. During the last conversation on July 3rd, 2007 between Mr. Blumenthal and Mr. Anselmo, Mr. Anselmo promised to send out a check by Federal Express immediately after the July 4th holiday.

18.    On July 12th in an exchange of emails Mr. Anselmo indicated that he was sending out a check that day by Federal Express. The next day July 13th, 2007, a Federal Express package did in fact arrive but the anticipated funds were not enclosed. An e-mail went out from Mr. Blumenthal's computer asking about the lack of funds and Mr. Anselmo responded that 2 packages were sent. Later that day Mr. Anselmo sent another email regarding the payment wherein he indicated that:

> *"... If you are referring to the check...that went to Frank...It was made out last week and I will get you the tracking number when I get in my office...."*

19.    Mr. Blumenthal immediately contacted Dr. Vicari who stated that no package was received nor was there ever any tracking number provided by Mr. Anselmo or M&M Marketing, L.L.C. for the claimed second package.

5

20.    Additional calls to Defendants Anselmo and M&M marketing, L.L.C. demanding payment were made by Mr. Blumenthal. Mr. Anselmo agreed to pay the sums due and owing to Mr. Blumenthal on August 18th, 2007. Once again Mr. Blumenthal was disappointed as no funds were tendered. Mr. Anselmo promised to pay the funds on August 24th, 2007. Once again Mr. Anselmo failed to tender the funds due and owing.

21.    In late September 2007, a business opportunity presented itself to Mr. Blumenthal. He was asked to provide funds to help another company and in exchange for providing the requested funds was offered his original investment plus One Hundred Fifty Thousand Dollars to be paid within a 60 day period. Mr. Blumenthal took the matter under advisement. On September 27th and 28th Mr. Blumenthal spoke several times with Mr. Anselmo regarding the monies due, and Mr. Blumenthal once again demanded payment. Mr. Anselmo was told of the business opportunity that had been afforded Mr. Blumenthal, and Mr. Blumenthal explained that without Mr. Anselmo's tender of the funds then due and owing, that Mr. Blumenthal could not take advantage of this new opportunity.

22.    Mr Anselmo once again promised that the funds would be sent and convinced Mr. Blumenthal to go ahead and agree to provide funds for the other company. Based on Mr. Anselmo's personal assurances Mr. Blumenthal promised to provide the necessary funds to the other company within 2 weeks.

23.    On Oct 1st, 2007 after countless telephone calls that went unanswered,

6

Mr. Anselmo sent the following in a text message to Mr. Blumenthal:

> *"Money is out. Will be in your account by ten am. Text me when*
> *you get it."*

24.     On Oct 2nd, 2007 Mr Blumenthal, after receiving no funds, tried unsuccessfully to reach Mr. Anselmo by phone and then tried sending a text message asking Mr. Anselmo to call immediately.

25.     In response to the text message Mr. Anselmo responded as follows:
> *"Money is def. Out from our end. The girl that handles wires is*
> *going to call you & text you with tracking info"*

26.     After waiting a while and hearing nothing further from Mr. Anselmo or his bank, Mr. Blumenthal contacted the bank directly and was told there was no record of any wire going out from Mr. Anselmo's account or those of M&M Marketing, L.L.C. to Mr. Blumenthal. Mr. Blumenthal immediately sent a text message to Mr. Anselmo advising him of the information obtained and he responded as follows:

> *"You think we only have one bank? I will call you*
> *later..maybe..your money was sent".*

27.     Mr. Blumenthal responded as follows:
> *"Matt, I would appreciate a call now to explain what is going on.*
> *This is not the way to do business. I have been more than patient*
> *and understanding. B a man!"*

28.     The following day Mr. Blumenthal was forced to tell the other company

that he could not make good on his promise to provide the funds.

29.    On or about October 15th, 2007, 2 checks were received by mail from Mr. Anselmo. The first check was drawn in the amount of One Million Five Hundred Fifty Thousand Dollars and the second check was for Three Hundred Eighty-seven Thousand Five Hundred Dollars. These two checks were deposited by Mr. Blumenthal on October 15th, 2007. The sum of the two checks did not equal the amount then due and owing. A telephone call to Mr. Anselmo to discuss the shortfall yielded a response indicating that he would *"...have his accountant look into the matter."* On October 19th, 2007, before hearing back from Mr. Anselmo or his Accountant, both checks were dishonored and could not be put through again. Mr. Blumenthal was charged for the dishonored checks and additional charges for other checks which were dishonored as a result of the bad checks.

30.    Shortly thereafter, in October 2007, following additional demands by Mr. Blumenthal, Mr. Anselmo agreed to pay the sum of Two Million One Hundred Thirty-Six Thousand Three Hundred Dollars to Mr. Blumenthal in full satisfaction of the funds then due and owing taking into consideration the lost opportunity that had been missed and the expenses incurred as a result of the bounced checks. Mr. Blumenthal agreed to accept this amount in satisfaction of the debt at that time.

31.    Following several additional collection calls, Mr. Anselmo once again, agreed to wire out the funds on October 23rd, 2007. Again no funds were received. This time however an email was sent to Dr. Vicari with a letter purporting to be from Mr.

8

Anselmo's bank explaining that a wire had in fact been sent out. A copy of this email is attached hereto and made a part hereof and marked Exhibit A.

32.     Mr. Blumenthal attempted to contact the individual identified in the October 24th, 2007, letter purportedly from U.S.Bancorp which was attached to the email to Dr. Vicari. A call to US Bancorp did not produce positive results. The bank had no record of having produced the letter and asked Mr. Blumenthal to forward them a copy of the email with the attachment.  The bank also opened a fraud investigation and then confirmed that no wire was forthcoming, the letter was clearly a forgery.

33.     A call was placed to Mr. Anselmo by Mr. Blumenthal to inform him of the events of the day, Mr. Anselmo indicated he would handle the situation and in a series of text messages confirmed that he would resolve the problem and tender all funds due and owing including the additional monies for Mr. Blumenthal's lost opportunity and bank charges resulting from the bounced checks. This all took place on October 29, 2007.

34.     On October 30th, 2007 by text message Mr. Anselmo sent the tracking numbers for the courier package supposedly containing the checks in full payment of the debt. A copy of the Shipment Receipt was faxed to Mr. Blumenthal as well, indicating delivery for October 31st, 2007.

35.     On October 31st no package arrived.  A call immediately went out to Mr. Anselmo seeking an explanation and demanding payment. Mr. Anselmo said *"...he would investigate."* A short time later Mr. Anselmo said that the package got delayed

9

and would arrive the next day.

36.     The next day a courier package arrived but it contained only promotional materials, and no checks. Mr. Anselmo was again contacted demanding payment and he explained that *"...his office had sent out 3 courier packages that day and that the checks must have been sent to someone else."* Mr. Anselmo said he would find the checks and call back.

37.     Later that day Mr. Anselmo said the checks had been located and he was having them sent to his office from *"California"* and that when package *"...ships they provide the number which then gets shared with you"*.

38.     On November 2, 2007 Mr. Anselmo sent another text message which read as follows:

> *"Package sent 2nd day air..which means it gets to my office mon. I am going to have a employee fly it out here..I am going to stay here until I get it....and"*

the next text message read:

> *"Then bring it to you in person or you can come and get it from me. I need this done...let me know your schedule for mon afternoon"*

39.     On November 5th, 2007 the following text was received:

> *"On flight 6079 arrives at 4. He will text you and can meet you anywere. He is going to stay the night now and get some other"*

10

*business done"*

40.     In several subsequent text messages that same day Mr. Anselmo said that the flight had been delayed several times, that an alternative flight reservation was made for the messenger on an different carrier, and that flight would arrive at O'HARE airport at 8:40 pm. At 9:38 pm Mr. Blumenthal sent the following text message to Mr. Anselmo:

> *"Not looking good. Heard nothing plane landed 1 hour ago. Need*
> *to hear from u NOW!"*

Another text message was sent out at 10:26 pm that night by Mr. Blumenthal who had still heard nothing from Mr. Anselmo or the messenger asking about the whereabouts of the messenger and the check.  No response was received that evening.

41.     The following morning Mr. Anselmo sent the following text message to Mr. Blumenthal:

> *"Plane landed on time but did not get rental car until almost 11.*
> *He checked into his hotel and will drop check at your office"*

42.     At 4:19pm November 6th, 2007 the following text message exchange took place:

> Anselmo: *"The car is at ashland and belmont heading south....if*
> *you want him to devert give me the address"*
> Blumenthal: *"No let him go to office"*
> Anselmo: *"ok"*

11

> Blumenthal: *"have him call 960-1990 and dave will come right*
>
> *down to get envelope"*
>
> Anselmo: *"What area code"*
>
> Blumenthal: *"312"*
>
> Blumenthal (5:39pm): *"What's going on. Need to know right*
>
> *NOW!"*
>
> Blumenthal: *" I have made someone stay late just for this"*
>
> Blumenthal: *"give me ur employees number"*

43.     Finally in frustration Mr. Blumenthal placed a telephone call to Mr.

Anselmo just before 6:00pm November 6th, 2007 and was told *"...Corey was only a few*

*blocks from (Mr. Blumenthal's) office and on his way to immediately deliver the checks"* and

then nothing further was heard from Corey or Mr. Anselmo that day and further efforts

to contact them were unsuccessful.

44.     Mr. Blumenthal then contacted Dr. Vicari who sent the following text

message to Mr. Blumenthal at 6:01pm November 6th, 2007:

> *"Finishing up. Ill call in an hour. Corey is apparently on his way*
>
> *to my house. Mattys attorney wants to talk to me. Details to*
>
> *follow. All this new to me."*

At 8:00 p.m. a further text message was received which read as follows:

> *"Yes, corey coming over after 9:30, I have to go out until then. I*
>
> *spoke with Matts attny. Matty coming back tomorrow to sign*

12

> *necessary papers. Im in middle of hospital emergency - not of my*
>
> *doing - I will still call with detail as soon as I get it straightened*
>
> *out."*

And then at 11:39 p.m. the following text was received by Mr. Blumenthal from Dr. Vicari:

> *"Stuck at hospital. I am meeting Matty and corey after my surgery*
>
> *in a.m.  And we are going straight to bank."*

Needless to say neither Mr. Anselmo or the checks arrived as indicated in the text message.

45.     At some point around this time Dr. Vicari advised Mr. Blumenthal that he had spoken to Mr. Anselmo and that he claimed to have been arrested by IRS agents when he got off the plane in Chicago.  Mr. Anselmo claimed to have been detained all night until he was able to get in touch with his Uncle. His Uncle allegedly recommended an attorney who helped coordinate Mr. Anselmo's release from custody the following morning.

46.     Mr. Blumenthal tried to reach Mr. Anselmo and finally got a hold of him by telephone just before he was supposedly boarding a plane back to Omaha, still without having tendered payment or making arrangements to do so.  Mr. Anselmo explained that he was *"exhausted"* from his ordeal,  was going home and, after speaking to his Attorney upon his return to Omaha, would contact Mr. Blumenthal again to arrange payment.

13

47.    Mr. Blumenthal eventually learned that Mr. Anselmo had not in fact spoken to his Uncle and was unable to verify that any legal action had been taken against Mr. Anselmo. Mr. Anselmo has continually refused to provide the name of any criminal lawyer handling any matters for him and continues to refuse to tender payment in spite of repeated and continuing demands.

48.    By this time Mr. Anselmo had offered and agreed to pay Mr. Blumenthal the sum of Two Million One Hundred Thirty-one Thousand Three Hundred Dollars. He confirmed this amount was due and owing in a conversation with Dr. Vicari and authorized Dr. Vicari to segregate that amount from the funds he had promised to deliver to Dr. Vicari at this time.

49.    On or about November 12, 2007 a telephone call took place between Mr. Blumenthal and Kathryn Hemenway.   Ms. Hemenway claimed to be Mr. Anselmo's attorney and tax accountant. Mr. Blumenthal described to her the history of the debt and the lawsuit planned on filing in the next few days.

50.    Ms. Hemenway requested Mr. Blumenthal delay taking further action. Mr. Blumenthal agreed to hold off taking legal action only if: (1) Ms. Hemenway was to take charge of the matter, (2) personally guaranteed that the Twelve Million Dollar cashiers check Mr. Anselmo claimed to have in his possession from US Bancorp payable to Defendants was verified by her as deposited,  and (3) she personally verified that a wire for the sums due and owing Mr. Blumenthal was authorized by Mr. Anselmo, communicated to the appropriate Bank personnel and was guaranteed to be sent as

14

soon as the check for Twelve Million Dollars cleared.

51.     Ms. Hemenway agreed to do all these things, and confirmed that these things were done by her in a series of faxes sent on November 12th, 20th and 26th, 2007.

52.     Contrary to Ms. Hemenway's representations, to date no funds have been received by Mr. Blumenthal and the debt remains unpaid.

53.     After not receiving the promised wires by Mr. Anselmo and Ms. Hemenway in the faxes, Mr. Blumenthal contacted Dr. Vicari to see if he had any new information. Dr. Vicari sent the following text message to Mr. Blumenthal at 11:44am Nov. 30th, 2007:

> *"Talked to Matt he swears money left his acct and as soon as bank releases it we will be done. Nothing more he knows to do. I can't verify, but that was the"*

54.     In the period since November 26th, 2007, Mr. Anselmo, in response to continuing demands, has repeatedly promised to tender the funds due and owing and has in fact agreed to pay the total sum of Two Million Two Hundred Thousand Dollars to Mr. Blumenthal. This was initially communicated to Mr. Blumenthal by way of a voicemail from Kathryn Hemenway and later confirmed personally by Mr. Anselmo in a telephone conversation with Mr. Blumenthal.

55.     On several more occasions in December 2007 Mr. Anselmo has stated that he sent out the checks, wired the money, was waiting for *"government approval"* to send the money, had received approval, then was still waiting for approval, needed tax

ID information from Mr. Blumenthal (which was immediately provided) before the funds could be released and other excuses too numerous to recount, however, to date no funds have been received, and the sum of Two Million Two Hundred Thousand Dollars remains unpaid, due and owing by Anselmo and M&M Marketing, L.L.C.

## COUNT I-Monies Due and Owing
### DEFENDANTS - ANSELMO and M&M Marketing, L.L.C.

56. Plaintiff, MICHAEL BLUMENTHAL, incorporates by reference as though fully set forth herein, the allegations of paragraphs 1 through 55 inclusive of this Complaint at Law as the allegations of paragraphs 1 through 55 of this Count I and further states:

57. Michael Blumenthal has done and performed all things required of him to be performed under the terms of the agreement between the parties.

58. Plaintiff Michael L. Blumenthal has repeatedly demanded the tender of all sums due.

59. Defendants Matthew H. Anselmo and M&M MARKETING, L.L.C., have repeatedly promised to pay the sum of Two Million Two Hundred Thousand Dollars, but to date have not paid and said sum remains due and owing to Plaintiff.

**WHEREFORE**, Plaintiff, MICHAEL L. BLUMENTHAL, prays for the entry of judgment against Defendants, Matthew H. Anselmo and M&M MARKETING, L.L.C. in the sum of Two Million Two Hundred Thousand Dollars plus interest and costs and for

16

such other and further relief as this court deems just and proper.

## COUNT II - UNJUST ENRICHMENT
## DEFENDANTS - ANSELMO and M&M Marketing, L.L.C.

60.      Plaintiff, MICHAEL BLUMENTHAL, incorporates by reference as though fully set forth herein, the allegations of paragraphs 1 through 55 inclusive of this Complaint at Law as the allegations of paragraphs 1 through 55 of this Count II and further states:

61.      Defendants Matthew Anselmo and M&M MARKETING, L.L.C., have diverted the sums due Plaintiff from the two business deals he participated in, to other business deals and new ventures which have come to and been accepted by Defendants, and/or has been used by defendants for other purposes to which Plaintiff did not agree.

62.      Defendants failure to timely repay the monies due and owing Plaintiff and their sending checks to Plaintiff from an account with insufficient funds constitutes theft under Illinois law.

63.      But for Defendants' unlawful retention of Plaintiff's money Defendants' would not have had the opportunity to profit from these other business opportunities or embark on new ventures and profit therefrom.

64.      That as a direct and proximate result of the above-described acts by Defendants, Matthew Anselmo and M&M MARKETING, L.L.C. and their acceptance, use and/or retention of Plaintiff's money, said Defendants have been unjustly enriched

17

in an amount in excess of TWO MILLION TWO HUNDRED THOUSAND DOLLARS.

**WHEREFORE**, Plaintiff, MICHAEL L. BLUMENTHAL, prays for the entry of judgment against Defendants, Matthew H. Anselmo and M&M MARKETING, L.L.C. in an amount in excess sum of Two Million Two Hundred Thousand Dollars and equal to the amount defendants have been unjustly enriched or the value of the actual benefits or profits received by defendants plus interest and costs and Plaintiff also prays for the imposition of a constructive trust on the assets of Matthew H. Anselmo and M&M MARKETING, L.L.C., and for such other and further relief as this court deems just and proper.

## COUNT III- CONVERSION
## DEFENDANTS - ANSELMO and M&M Marketing, L.L.C.

65.    Plaintiff, MICHAEL BLUMENTHAL, incorporates by reference as though fully set forth herein, the allegations of paragraphs 1 through 55 and 57 inclusive of this Complaint at Law as the allegations of paragraphs 1 through 55 and 57 of this Count III and further states:

66.    Plaintiff lent defendants money that was wholly his own.

67.    Plaintiff has an absolute right to his funds based upon the agreement made with the Defendants. That agreement required repayment on or before June 6, 2007.

68.    As detailed in paragraphs 16, 17, 20, 21, 30, 31, 35, 36, 47, 54 and 55, Plaintiff has repeatedly demanded, and continues to demand, return of his money.

18

69.     Defendants have since June 6th, 2007 wrongfully, wilfully and without Plaintiff's permission or authorization assumed control and dominion over Plaintiff's property in their failure to return the monies demanded and owed.

**WHEREFORE**, Plaintiff, MICHAEL L. BLUMENTHAL, prays for the entry of judgment against Defendants, Matthew H. Anselmo and M&M MARKETING, L.L.C. in an amount in excess sum of Two Million Two Hundred Thousand Dollars, plus punitive damages and court costs and for such other and further relief as this court deems just and proper.

### COUNT IV-FRAUD
### DEFENDANTS - ANSELMO and M&M Marketing, L.L.C.

70.     Plaintiff, MICHAEL BLUMENTHAL, incorporates by reference as though fully set forth herein, the allegations of paragraphs 1 through 55 inclusive of this Complaint at Law as the allegations of paragraphs 1 through 55 of this Count IV and further states:

71.     Based on all the information known to Plaintiff, it is clear that Defendants misrepresented their original reason for needing Plaintiff's money and misrepresented their ability and/or their intention to repay the money provided by Plaintiff.

72.     Based on Defendants' misrepresentations as set forth in paragraphs 7 - 55 inclusive, and their actions since June 6th, 2007, it is also clear that Defendants knew at the time that they made the misrepresentations that they had no intention of repaying the Plaintiff as promised, if at all.

19

73.    Defendants' misrepresented the facts of the transactions he needed Plaintiff's funds for with the intent to impress Plaintiff and induce him to provide the funds requested.

74.    Defendant utilized and played upon the close family relationship which existed between Plaintiff and other members of Defendant ANSELMO's family, specifically, Dr. Vicari, to further induce Plaintiff into providing the funds.

75.    The Plaintiff, in reliance upon the Defendants' false representations, believing them to be true, provided the funds requested to Plaintiff's detriment.

76.    As a direct and proximate cause of the foregoing fraudulent acts by the Defendants', Plaintiff was injured and sustained damages including but not limited to: loss of his original investment, the loss of other business opportunities, interest, bank charges for the dishonored checks and damage to his reputation.

**WHEREFORE**, Plaintiff, MICHAEL L. BLUMENTHAL, prays for the entry of judgment against Defendants, Matthew H. Anselmo and M&M MARKETING, L.L.C. in an amount in excess sum of Two Million Two Hundred Thousand Dollars, plus punitive damages, court costs and for such other and further relief as this court deems just and proper.

## COUNT V-Promissory Estoppel
## DEFENDANT HEMENWAY

77.    Plaintiff, MICHAEL BLUMENTHAL, incorporates by reference as though fully set forth herein, the allegations of paragraphs 1 through 55 inclusive of this Complaint at Law as the allegations of paragraphs 1 through 55 of this Count V and

20

further states:

78.     Defendant Kathryn Hemenway is an attorney licensed to practice law in the state of Nebraska, with offices at 2543 S. 153rd Circle, Omaha, Nebraska 68137.

79.     Defendant Hemenway represented herself as the tax accountant and attorney for defendant.

80.     In November of 2007, Hemenway told Mr. Blumenthal that she helped Anselmo and M&M MARKETING, L.L.C deposit the approximate sum of Twelve Million Dollars into an account in the name of M&M Marketing, L.L.C. at Wells Fargo Bank. These funds were allegedly from Mr. Anselmo and M&M Marketing, L.L.C.'s account at US Bancorp which the bank closed in response to the investigation it conducted as discussed in paragraphs 30, 31 and 32 above.

81.     In response to Mr. Blumenthal's concerns regarding his getting his money from defendants Anselmo and M&M Marketing, L.L.C. and to Mr. Blumenthal's indications that he was going to pursue immediate legal action, Ms. Hemenway asked Mr. Blumenthal *"to hold off on any legal action while the check clears and that she would insure that Mr. Blumenthal was paid form those funds."*

82.     Mr. Blumenthal indicated that he would only agree to hold off pursuing legal action if Ms. HEMENWAY personally verified and insured that the Twelve Million Dollar check existed, was valid, was deposited and that once it cleared that a wire for the monies owed to Mr. Blumenthal was preauthorized to be to sent out.

83.     Mr. Blumenthal informed Ms. Hemenway  that he did not trust or

21

believe Mr. Anselmo. Mr. Blumenthal went on to state to Ms. Hemenway that he would not accept his word on anything, and that it was only based on Ms. Hemenway's personal representations, that Mr. Blumenthal was holding off taking any legal action.

84.    Ms. Hemenway then sent out three faxes confirming the foregoing, as set out in paragraphs 49, 50 and 51. Mr. Blumenthal relied upon Ms. Hemenway's representations and statements in the three faxes.

85.    On November 27th, 2007 Ms. Hemenway left the following voicemail on Mr. Blumenthal's telephone:

> "Hi, Mr. Blumenthal.  I have verified that the money is
> physically out of the M&M Marketing account. It's in
> process.  I do not know what's causing this. I spoke with the
> branch manager. They said that sometimes they are subject
> to review, but it has been moved out of M&M Marketing's
> account and instead of the Two point One whatever, He's
> actually transferring or wiring Two Million Two Hundred
> Thousand, to hopefully make up for any interest that may
> have accrued.  It has been gone, it's gone, it's out and I will
> talk to you tomorrow. I am sorry I did get back to at this late
> of a time. Again, this is Kate, Kathryn Hemenway. Thank
> you."

86.    Mr. Blumenthal's reliance was expected and anticipated by Ms.

22

Hemenway, and was reasonably foreseeable by her.

87.     Mr. Blumenthal in reliance on Ms. Hemenway's representations has been injured and sustained damages because the monies which existed have been diverted and not sent to Plaintiff. Plaintiff has also been damaged in the loss of the use of the funds.

**WHEREFORE**, Plaintiff, MICHAEL L. BLUMENTHAL, prays for the entry of judgment against Defendant KATHRYN HEMENWAY in an amount in excess sum of Two Million Two Hundred Thousand Dollars plus pre and post judgment interest, court costs  and for such other and further relief as this court deems just and proper.

## COUNT VI-BREACH OF CONTRACT In the alternative
## DEFENDANT HEMENWAY

88.     Plaintiff, MICHAEL BLUMENTHAL, incorporates by reference as though fully set forth herein, the allegations of paragraphs 1 through 55 and 77 to 87 inclusive of this Complaint at Law as the allegations of paragraphs 1 through 55 and 77-87 of this Count VI and further states:

89.     In the alternative to Plaintiff's promissory estoppel claim against Defendant Hemenway Plaintiff asserts herein a claim for breach of contract.

90.     On information and belief,  Ms. Hemenway received consideration in the form of increased billings, monies and goodwill from Defendants Anselmo and M&M Marketing, L.L.C. by convincing Mr. Blumenthal to delay taking legal action.

**WHEREFORE**, Plaintiff, MICHAEL L. BLUMENTHAL, prays for the entry of

23

judgment against Defendant KATHRYN HEMENWAY in an amount in excess of the

sum of Two Million Two Hundred Thousand Dollars, plus pre and post judgment

interest, court costs and for such other and further relief as this court deems just and

proper.

Respectfully submitted,

**MICHAEL L. BLUMENTHAL, Plaintiff**


BY:＿＿＿/S/＿＿＿Michael L. Blumenthal＿＿＿＿＿＿＿＿

**MARTIN A. BLUMENTHAL, ESQ.**
**ATTORNEY FOR MICHAEL L. BLUMENTHAL**
**1 NORTHFIELD PLAZA - SUITE 300**
**NORTHFIELD, IL   60093**
**(847) 441-2687**
**ATTORNEY I.D.# 6180069**

**MICHAEL L. BLUMENTHAL, ESQ.**
**MILTON M. BLUMENTHAL & ASSOCIATES**
**77 WEST WASHINGTON STREET  - SUITE 1720**
**CHICAGO, ILLINOIS 60602**
**(312) 372-3566**
**ATTORNEY I.D. # 6183007**

**mike**

| | |
|---|---|
| **From:** | Frank Vicari [frank@vicari.com] |
| **Sent:** | Wednesday, October 24, 2007 10:52 PM |
| **To:** | Mike Blumenthal |
| **Subject:** | FW: banking information |
| **Attachments:** | U.S. Bank Doc-Int.Sec.wps |

**From:** matthew [mailto:matty441@yahoo.com]
**Sent:** Wed 10/24/2007 9:51 PM
**To:** Frank Vicari
**Subject:** Re: banking information

There is no problem...I am sorry I put you in this situation....The tracking numbers that they provided me are as follows 946878145 and 949376789. I have included the e-mail attachment that I got from my bank...I am positive after speaking with everyone under the sun that this was held up because of the amount and it will be in his account by tommorow afternoon...The branch manager told me it would be in there by 3 p.m. and that this is not out of the norm. I will call Mike tommorow from the bank and have him speak with the manager to make sure there are no problems at 3:30. I tried e-mailing you this from my phone and it did not realize that it did not go through!
Matty

*Frank Vicari <frank@vicari.com> wrote:*

|

**Matthew Anselmo**
**M&M Marketing**
**1-800-673-5935**
**402-597-2285**
**www.freegolfer.com**
**11329 P Street Omaha, NE 68136**

Do You Yahoo!?
Tired of spam? Yahoo! Mail has the best spam protection around
http://mail.yahoo.com

**Exhibit A**



Corporate Headquarters
U.S. Bancorp
U.S. Bancorp Center
800 Nicollet Mall
Minneapolis, MN 55402

**To: M&M Marketing**

**From: Internal Security**

**Date: October 24, 2007**

**Subject: Wire Transfer for Mr. Vicari & Mr. Blumenthal**

Mr. Anselmo,
As you requested two wire transfers were processed from M&M Marketing's Money
Market Account on October 23, 2007, at 3:42 p.m. to a Mr. Frank Vicari and Mr. Mike
Blumenthal. You were informed that the wire transfers would be processed the following
day because of the U.S. Bank cut off time. You requested that tracking information be
provided for both of these transactions which was provided to you. You were also
informed that the bank has the right to review transactions and must do so because of
certain safe guards that are in place for U.S. Bank  and the safety of our customers. Today
at approximately 2:15 p.m. you entered your branch located in Omaha and requested to
speak with the branch manager. You were again informed that your wire transfer was
processed but the transaction was being reviewed.  We request your patients in this
matter and understanding that these safe guards are in place for everyone's benefit. Your
wire transfer will finish being reviewed and processed on October 25, 2007. We
appreciate your business and feel free to contact Jackie Morgan at your U.S. Bank branch
to confirm these transactions and for any future banking needs you may have.

**334557:457541314**

EXHIBIT A pg.2

AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### SUMMONS IN A CIVIL CASE

Michael L. Blumenthal,

                Plaintiff

V.

MATTHEW H. ANSELMO, M & M
MARKETING, L.L.C. and KATHYRN
HEMENWAY,          Defendants

CASE NUMBER:    07 CV 7230

ASSIGNED JUDGE:   GOTTSCHALL

DESIGNATED
MAGISTRATE JUDGE:  MASON

TO: (Name and address of Defendant)

Matthew H. Anselmo, Individually
415 Martin Drive
Belevue, NE  68005

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

MARTIN A. BLUMENTHAL, ESQ.
1 NORTHFIELD PLAZA #300
NORTHFIELD, IL  60093

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**Michael W. Dobbins, Clerk**

*Cynthia Mercado*

--------------------------------------

**(By) DEPUTY CLERK**

**January 3, 2008**

--------------------------------------

**Date**

EXHIBIT "2"

AO 440 (Rev. 05/00) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me [1] | DATE   *1-4-08* |
| NAME OF SERVER *(PRINT)*   Carl Barnett | TITLE   Process Server |

*Check one box below to indicate appropriate method of service*

☒ Served personally upon the defendant.  Place where served:       11329 P St

   Omaha Nebraska

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

_____

☐ Other (specify): _____

_____

_____

_____

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES   *25.00* | TOTAL   *25.00* |

**DECLARATION OF SERVER**

   I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on   *1/4/08*
      Date             *Signature of Server*

           *208 N 118th St STE 1-A Omaha NE 68154*
                *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440 (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### SUMMONS IN A CIVIL CASE

MICHAEL L. BLUMENTHAL,

                 Plaintiff

          V.

MATTHEW H. ANSELMO, M & M
MARKETING, L.L.C. and KATHYRN
HEMENWAY,          Defendants

CASE NUMBER:

ASSIGNED JUDGE:

DESIGNATED
MAGISTRATE JUDGE:

## 07 C 7230

**JUDGE GOTTSCHALL
MAGISTRATE JUDGE MASON**

TO: (Name and address of Defendant)

Matthew H. Anselmo
President of M & M Marketing, L.L.C.
415 Martin Drive
Belevue, NE 68005

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

MARTIN A. BLUMENTHAL, ESQ.
1 NORTHFIELD PLAZA #300
NORTHFIELD, IL 60093

an answer to the complaint which is herewith served upon you, within     20     days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**Michael W. Dobbins, Clerk**

**(By) DEPUTY CLERK**

**December 26, 2007**

**Date**



AO 440 (Rev. 05/00) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me [1] | DATE<br>Jan 4 2008 |
| NAME OF SERVER *(PRINT)*<br>Carl Barnett | TITLE<br>Process Server |

*Check one box below to indicate appropriate method of service*

☒ Served personally upon the defendant. Place where served:  M&M Marketing
(Matt Anselmo) 11329 P St Omaha Nebraska

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES<br>25.00 | TOTAL<br>25.00 |

| DECLARATION OF SERVER |
|---|

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on  1/4/08
       Date              Signature of Server

           268 N 115th St Ste 1-a Omaha NEbraska 68154
                 Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.



Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 7230 | **DATE** | 1/31/2008 |
| **CASE TITLE** | Blumenthal vs. Anselmo | | |

**DOCKET ENTRY TEXT**

Motion hearing held. Motion by Plaintiff to default defendant for failure to file an answer or otherwise plead [12] is granted. Default judgment is entered against Defendants, Matthew H. Anselmo and M & M Marketing L.L.C in the amount of Two Million Two Hundred Thousand ($2,200,000.00) plus prejudgment interest at the Illinois rate of 9%, from June 6, 2007 through judgment date. Oral motion by Plaintiff for temporary restraining order to bar defendants from transferring its assets out of the Continental United States is granted based on the sworn allegations of the complaint. The clerk is directed to correct the docket to reflect that summonses were executed by Carl Barnett (process server) and not Michael Blumenthal.

Docketing to mail notices.
Mail AO 450

00:15

| | Courtroom Deputy Initials: | RJ |
|---|---|---|

07C7230 Blumenthal vs. Anselmo



**EXHIBIT "4"**

**mike**

| | |
|---|---|
| **From:** | usdc_ecf_ilnd@ilnd.uscourts.gov |
| **Sent:** | Thursday, February 07, 2008 2:51 PM |
| **To:** | ecfmail_ilnd@ilnd.uscourts.gov |
| **Subject:** | Activity in Case 1:07-cv-07230 Blumenthal v. Anselmo et al order on motion for extension of time to answer |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### United States District Court

### Northern District of Illinois - CM/ECF LIVE, Ver 3.0

**Notice of Electronic Filing**

The following transaction was entered on 2/7/2008 at 2:50 PM CST and filed on 2/7/2008
**Case Name:**          Blumenthal v. Anselmo et al
**Case Number:**      1:07-cv-7230
**Filer:**
**Document Number:** 23

**Docket Text:**
MINUTE entry before Judge Joan B. Gottschall : Motion hearing held on 2/7/2008. Motion by Defendant Matthew H Anselmo for extension of time to answer [16] is held in abeyance. Defendant, Matthew H Anselmo is given an additional two weeks by 2/21/2008 to retain counsel to represent him. Plaintiff's Objection to Defendant Anselmo's Motion for an extension of time to answer [21] is held in abeyance until 2/21/2008. Plaintiff's motion for extension of time to respond to Defendant Hemenway's Motion to Dismiss [20] is granted. Briefing schedule as to MOTION by Defendant Kathryn Hemenway to dismiss pursuant to Fed R Civ P 12(b)(2) [14] is as follows: Responses due by 3/14/2008. Replies due by 4/4/2008. Status hearing will be set with ruling by mail. Mailed notice (rj, )


**1:07-cv-7230 Notice has been electronically mailed to:**

Michael L. Blumenthal     mike@mmblumenthal.com

Martin A. Blumenthal     marty0015@comcast.net

**1:07-cv-7230 Notice has been delivered by other means to:**

**EXHIBIT "5"**

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0
### Eastern Division

Michael L. Blumenthal

                Plaintiff,

v.

Matthew H Anselmo, et al.

                Defendant.

Case No.: 1:07−cv−07230
Honorable Joan B. Gottschall

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, February 14, 2008:

      MINUTE entry before Judge Joan B. Gottschall : Motion hearing held on 2/14/2008. MOTION by Plaintiff Michael L. Blumenthal for temporary restraining order extension, MOTION by Plaintiff Michael L. Blumenthal for writ of execution [24] is granted. It is hereby ordered that Temporary Restraining Order barring defendants from transferring its assets out of the Continental United States is extended to 02/29/2008. This matter is referred to Magistrate Judge Mason for Report and Recommendation on oral motion by Plaintiff for Preliminary Injunction. Status hearing set for 2/27/2008 at 09:30 AM. The court grants Plaintiff leave to file motion re: attorney/client privilege as to the terms stated in open court. Mailed notice(rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.


EXHIBIT "6"

* * * Communication Result Report ( Feb. 21. 2008 11:06AM ) * * *

1) Milton M. Blumenthal & Associate
2) 312-372-3573

Date/Time: Feb. 21. 2008 11:05AM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 0937 | Memory TX chris | 5062005 | P. 2 | OK | |

Reason for error
E. 1) Hang up or line fail          E. 2) Busy
E. 3) No answer                     E. 4) No facsimile connection
E. 5) Exceeded max. E-mail size

---

*Law Offices of*
*Milton M. Blumenthal & Associates*
77 West Washington Street

Milton M. Blumenthal                Suite 1720                    Telephone 312/372-3556
                                                                  Facsimile 312/372-3573
Michael L. Blumenthal               Chicago, Illinois 60602       Email mlblum@blumenthal.com

DATE: 2/21 _____, 2008.

RE: CASE: Blumenthal v Anselmo

COURT NO. 07 CV 7230

#1 TO: James Pittacora        #2 Matthew Anselmo

ATTN: Pittacora & Crotty      MJM Marketing

FAX #1 (312) 506-2005    (773)_____  (708)_____
                         #2 (702) 597-2320 (847)
(630)_____

OTHER: (    )_____  (    )_____  (    )_____

FROM:    [✓] MICHAEL L. BLUMENTHAL, ESQ.
         [  ] CHRISTINE A. MURO, Legal Assistant

[  ] ORIGINAL BY MAIL  [  ] ORIGINAL WILL NOT BE MAILED  [  ] TO FOLLOW BY DELIVERY

COMMENTS: Court's Docket entry dated 2/21/08 setting
this matter for hearing on 2/25/08 @ 10:00AM
in Courtroom 2214.

*IN THE EVENT YOU DO NOT RECEIVE ALL PAGES, KINDLY CONTACT CHRIS AT 312/372-3586.*

NOTE: THE FACSIMILE MESSAGE ACCOMPANYING THIS TRANSMITTAL FORM CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED SOLELY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS SPECIFICALLY ADDRESSED. IF THE READER OF THIS NOTICE IS NOT THE INTENDED ADDRESSEE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS BY MAIL. WE APPRECIATE YOUR COOPERATION.

TOTAL PAGE(S) 02 ___ THIS COVER PAGE INCLUDED.

EXHIBIT 7

```
*  *  *  Communication Result Report ( Feb. 21.  2008 11:07AM ) *  *  *
```
1) Milton M. Blumenthal & Associate
2) 312-372-3573

Date/Time: Feb. 21.  2008 11:06AM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|------|------|-------------|-------|--------|-----------|
| 0938 | Memory TX chris | 14025972320 | P.  2 | OK | |

```
Reason for error
    E. 1) Hang up or line fail          E. 2) Busy
    E. 3) No answer                     E. 4) No facsimile connection
    E. 5) Exceeded max. E-mail size
```

*Law Offices of*
*Milton M. Blumenthal & Associates*
77 West Washington Street

Milton M. Blumenthal
*reserved*
Michael L. Blumenthal

Suite 1720
Chicago, Illinois 60602

*Telephone* 312/372-3566
*Facsimile* 312/372-3573
*Email* miltm@blumenthal.com

DATE: 2/21 , 2008.

RE: CASE Blumenthal v Anselmo

COURT NO. 07 CV 7230

#1 TO: James Pittacora        #2 Matthew Anselmo

ATTN: Pittacora & Crotty      MVM Marketing

FAX #1 (312) 506-2005    (773) _____ (708) _____
      (630) _____    #2 (402) 597-2320 (847) _____

OTHER: ( )_____ ( )_____ ( )_____

FROM:    [ ✓ ] MICHAEL L. BLUMENTHAL, ESQ.
         [  ] CHRISTINE A. MURO, Legal Assistant

[ ] ORIGINAL BY MAIL  [ ] ORIGINAL WILL NOT BE MAILED  [ ] TO FOLLOW BY DELIVERY

COMMENTS: Court's Docket entry dated 2/21/08 Setting
THIS matter for hearing on 2/25/08 @ 10:00am
in Courtroom 2214.

*IN THE EVENT YOU DO NOT RECEIVE ALL PAGES, KINDLY CONTACT CHRIS AT 312/372-3566.*

NOTE: THE FACSIMILE MESSAGE ACCOMPANYING THIS TRANSMITTAL FORM CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED SOLELY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS SPECIFICALLY ADDRESSED. IF THE READER OF THIS NOTICE IS NOT THE INTENDED ADDRESSEE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS CONSTITUTION IS DIRECTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS BY MAIL. WE APPRECIATE YOUR COOPERATION.

TOTAL PAGE(S) 02 THIS COVER PAGE INCLUDED.

EXHIBIT "8"

KATHRYN M. HEMENWAY
ATTORNEY AT LAW
2543 S 153RD CIRCLE
OMAHA, NE 68137
Phone: 402 339-4040
Fax:    402 339-9733

November 12, 2007

Attn: Mr. Michael Blumenthal
Phone: 312-371-3566
Fax:    847-705-0105

Mr. Blumenthal,

Per our conversation, your funds of $2,106,300.00 will be wired from the new the M&M
Marketing LLC Wells Fargo Bank Account to your Harris Bank Account (Routing No:
07102 ▮▮▮; Account No: 4801 ▮▮▮ ) on Monday, November 19, 2007.

Mr. Anselmo had a different Harris Bank account number (Account No: 191 ▮▮▮ ) to
wire the money, please confirm the appropriate number so as to avoid any improper
transfer.

Thank you.

Sincerely,

Kathryn M. Hemenway
NSBA No:17702

**EXHIBIT "9"**

KATHRYN M. HEMENWAY
ATTORNEY AT LAW
2543 S 153RD CIRCLE
OMAHA, NE 68137
Phone: 402 339-4040
Fax:    402 339-9733

November 13, 2007
**CONFIRMATION OF**
**CORRECTED INFORMATION**

Attn: Mr. Michael Blumenthal
Phone: 312-371-3566
Fax:    847-705-0105

Mr. Blumenthal,

Per our conversation this morning, M & M Mrketing LLC will wire : $2,131,300.00 from its Wells Fargo Bank Account to your Harris Bank Account (Routing No: 0710⬛⬛ ; Account No: 4801⬛⬛ ) on Monday, November 19, 2007.

Thank you.

Sincerely,

Kathryn M. Hemenway
NSBA No:17702

**mike**

---

**From:**    Vicari, Frank

**Sent:**    Tuesday, November 20, 2007 5:40 PM

**To:**    mike@mmblumenthal.com

**Subject:** hemingway

I spoke with Ms. Hemingway. Pretty much same message you indicated in text msg.
She said she spoke with the bank personally. This is the same bank her husbands company uses and the "10 day" policy is common for them. She also said she was somewhat surprised when they originally told you 5 bus days.
She also said they confirmed the source of the funds (if I understood her correctly) and that she anticipated no further issues. Just a matter of waiting out the 10 days.
I didn't know what else to ask her and she sounded positive and confident.
I'll talk to you later.
Frank


**Frank A. Vicari, MD, FACS, FAAP**



Chicago, IL 60614



KATHRYN M. HEMENWAY
ATTORNEY AT LAW
2543 S 153RD CIRCLE
OMAHA, NE 68137
Phone: 402 339-4040
Fax:    402 339-9733

November 20, 2007

Attn: Mr. Michael Blumenthal
Phone: 312-371-3566
Fax:    847-705-0105

Mr. Blumenthal,

Per our conversation, I have seen the deposit slip showing the funds were deposited into
Wells Fargo Bank

Per the Wells Fargo Bank Manager, the funds are being held until Monday, November
26, 2007. The wire department is already in receipt of the wire order and is set to wire the
money as soon as it is available on Monday, November 26, 2007.

Thank you.

Sincerely,

Kathryn M. Hemenway
NSBA No. 17702

KATHRYN M. HEMENWAY
ATTORNEY AT LAW
2543 S 153RD CIRCLE
OMAHA, NE 68137
Phone: 402 339-4040
Fax:    402 339-9733

November 26, 2007

Attn: Mr. Michael Blumenthal
Phone: 312-371-3566
Fax:    847-705-0105

Mr. Blumenthal,

Due to Thanksgiving shortening the number of business days last week, I have been
informed that the availability of the money for wiring has been delayed by one day.

We have been trying to get the bank to release the funds and wire today, but in all
probability it will not be available for transfer until tomorrow.

I apologize for the delay.

Thank you.

Sincerely,

Kathryn M. Hemenway
NSBA No:17702