IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL L. BLUMENTHAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 7230 |
| | ) | |
| MATTHEW H. ANSELMO, | ) | Judge Joan B. Gottschall |
| M & M MARKETING, L.L.C., and | ) | |
| KATHRYN HEMENWAY, | ) | Magistrate Judge Michael T. Mason |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

Michael T. Mason, United States Magistrate Judge:

Before the Court is plaintiff's motion for preliminary injunction. The District Court referred the motion to this Court for a report and recommendation. As set forth more fully below, this Court recommends that the District Court grant plaintiff's motion in part and deny the motion in part.

## BACKGROUND

**Plaintiff's Complaint**[1]

This action arises out of a loan plaintiff Michael Blumenthal ("plaintiff") made to defendants Matthew Anselmo ("Anselmo") and M & M Marketing, LLC ("M&M"). On or about May 3, 2007, Anselmo approached plaintiff and Dr. F.A. Vicari ("Dr. Vicari") with a request to fund a business opportunity that Anselmo and his company, M&M, had with Northrop Grumman Corporation. Anselmo explained that M&M had an order to provide

---

[1] This section is limited to the facts necessary for the resolution of plaintiff's motion for preliminary injunction.

Northrop Grumman with a large number of specially embroidered shirts but he needed working capital to pay his supplier in order to complete the order. Anselmo requested that plaintiff and Dr. Vicari invest a combined sum of $1,200,000.00.

Defendants promised to repay the loan by Labor Day plus twenty-five percent. Anselmo further promised to repay the funds regardless of the outcome of his dealings with Northrop Grumman. Based on these representations, plaintiff agreed to provide the funds. Dr. Vicari agreed to provide $315,000.00 and plaintiff agreed to provide the remaining $980,000.00 to defendants Anselmo and M&M. On May 14, 2007, plaintiff wired $540,000.00 to defendants. On May 25, 2007, plaintiff wired defendants the remaining $440,000.00.

After receiving the initial wires, Anselmo contacted plaintiff and requested an additional $600,000.00 to finance another business opportunity. Anselmo explained that if plaintiff was willing to advance the additional funds, either Anselmo individually or M&M, would be in a position to repay the original $980,000.00, the additional $600,000.00, plus twenty-five percent on the combined debt by June 6, 2007. After conferring with Dr. Vicari, plaintiff agreed to provide the additional funds. On May 29, 2007, plaintiff wired the additional $600,000.00 to defendants.

Defendants did not repay the combined debt on June 6, 2007. Despite repeated demands for repayment and countless telephone calls, e-mails, and text messages since June 6, 2007, defendants still have not tendered the sums owed. On or about November 12, 2007, plaintiff spoke with defendant Kathryn Hemenway.[2] Ms.

---

[2] Plaintiff's motion for preliminary injunction is not directed at defendant Hemenway.

Hemenway claimed to be Anselmo's attorney and tax accountant. During the telephone conversation, plaintiff explained the history of the debt to Ms. Hemenway and the lawsuit he planned on filing within the next few days.

Ms. Hemenway requested that plaintiff delay taking further action. Plaintiff agreed to hold off taking legal action only if Ms. Hemenway: (1) took charge of the matter, (2) personally guaranteed that a $12 million check Anselmo claimed to have in his possession from US Bancorp, payable to defendants, was verified by her as deposited, and (3) personally verified that a wire for the sums due and owing to plaintiff was authorized by Anselmo, communicated to the appropriate bank personnel and was guaranteed to be sent as soon as the check for the $12 million cleared. Ms. Hemenway agreed to the foregoing and confirmed the same via facsimiles sent on November 12, 20 and 26, 2007.

Since November 27, 2007, in response to plaintiff's demands for repayment, Anselmo has repeatedly promised to tender the funds due and owing and has agreed to pay the total sum of $2,200.000.00 to plaintiff. However, to date, no funds have been tendered and the debt remains unpaid.

**Procedural History**

On January 4, 2008, defendants Anselmo and M&M were served with plaintiff's complaint. Based on both defendants' failure to appear within the time allowed, plaintiff filed a motion for an order of default and for the entry of default judgment on January 28, 2008. On January 31, 2008, Judge Gottschall held a hearing on plaintiff's motion. At the conclusion of the hearing, Judge Gottschall found defendants Anselmo and M&M in default and entered a default judgment against them and in favor of plaintiff in the

sum of $2,200,000.00, plus prejudgment interest at nine percent.

On the same day, Judge Gottschall entered a Temporary Restraining Order ("TRO") against defendants Anselmo and M&M prohibiting them from transferring any of their assets out of the continental United States.

Defendant Anselmo subsequently filed a motion for extension of time to answer plaintiff's complaint. Defendant Anselmo noticed the motion for February 7, 2008. However, he failed to appear that day. Even though Anselmo failed to appear, Judge Gottschall generously gave him fourteen days, until February 21, 2008, to hire an attorney and file an appearance.[3]

On February 14, 2008, Judge Gottschall extended the TRO for an additional ten business days, through and including February 29, 2008. Judge Gottschall then referred this matter to us for a report and recommendation on plaintiff's oral motion for preliminary injunction.

On February 21, 2008, this Court held a status in order to set a hearing date on plaintiff's motion for preliminary injunction. This Court directed plaintiff to file a written motion for preliminary injunction by February 22, 2008 and we set the hearing for February 25, 2008 at 10:00 A.M. This Court instructed plaintiff to send a copy of the Order setting the hearing date to defendants immediately. At approximately 11:05 A.M. on February 21, 2008, plaintiff sent defendants Anselmo and M&M a copy of this Court's February 21, 2008 Order via facsimile. Plaintiff attached facsimile confirmation sheets as Exhibits 7 and 8 to his motion for preliminary injunction.

---

[3] To date, no attorney has filed an appearance on behalf of Anselmo or M&M.

**Plaintiff's Motion for Preliminary Injunction**

On February 22, 2008, plaintiff filed his motion for preliminary injunction.  Plaintiff asks for various forms of injunctive relief in his motion.  In particular, plaintiff seeks to:

1) Enjoin and prohibit defendants Anselmo and M&M from transferring any of their assets outside of the United States;

2) Enjoin and prohibit defendants Anselmo and M&M from transferring or selling any stock they may own or control in any public, private or closely held companies pending satisfaction of the judgment;

3) Bar defendants Anselmo and M&M from entering into or making any extraordinary or unusual business transfers or paying any extraordinary or unusual business expenses without prior leave of court, until plaintiff's judgment has been satisfied;

4) Require defendants Anselmo and M&M to identify, in writing directed to plaintiff, specifically and in detail where the funds, which were previously on deposit with U.S. Bank in September/October 2007, were transferred to or how they were spent or otherwise disposed of within forty-eight (48) hours;

5) Obtain an order from this court requiring defendants Anselmo and M&M to repatriate sufficient funds to satisfy their outstanding liability to plaintiff within seven (7) days and identify, in writing directed to plaintiff, the location of said funds;

6) Obtain an order from this court requiring defendants Anselmo and M&M to identify, in writing directed to plaintiff, all bank accounts which they have anywhere in the world, in their name or under their direction and control, directly or indirectly within forty-eight (48) hours;

7) Obtain an order from the court requiring defendants Anselmo and M&M to provide plaintiff, in writing, with a list of all tangible assets located anywhere in the world which are owned or controlled directly or indirectly by them within forty-eight (48) hours;

8) Obtain an order from this court requiring defendants Anselmo and M&M to provide plaintiff with a written list of any and all third parties to whom transfers of tangible assets have already been made since June 6, 2007 or who hold property or assets of these defendants within forty-eight (48) hours;

9) Obtain an order requiring defendants Anselmo and M&M to identify, in writing directed to plaintiff, where the supposed $12,000,000.00 check was deposited and further identify, in writing directed to plaintiff, in detail where and how those funds have been spent or otherwise disposed of within forty-eight (48) hours specifically including the name, address and telephone numbers of any and all entities and/or individuals who received or who control any of the funds from that check;

10) Obtain an order barring defendants Anselmo and M&M from further encumbering any assets or from taking on a new debt until plaintiff's judgment has been fully satisfied.

Finally, plaintiff requests that this Court waive the security that Federal Rule of Civil Procedure 65(c) requires or in the alternative, require a $1.00 security payable on further order of the Court to the Clerk of the Court.

**Plaintiff's Declaration**

Plaintiff also filed a Declaration in connection with his motion for preliminary injunction. In the Declaration, plaintiff states that in the late summer and early fall of 2007, Anselmo negotiated for and purchased a foreign corporation in a tax haven jurisdiction outside the reach of the United States. Based on conversations plaintiff had with Anselmo during this time period, plaintiff learned that Anselmo intended to divert funds that he and M&M earned from the sale of their products to this offshore foreign corporation.

Plaintiff also states that in October 2007, Anselmo indicated that his prior bank had closed his accounts and provided him with a check for $12 million, representing the balance of funds in his combined accounts. Anselmo promised and allegedly attempted to deliver this check to plaintiff for deposit in plaintiff's trust account in order to afford plaintiff some security and guarantee that he would be repaid. The $12 million check was never tendered to plaintiff.

Plaintiff further states that in late fall/early winter of 2007, Anselmo indicated to plaintiff that he had traveled to New York City to execute loan documents in an effort to secure adequate funding to repay his obligations to plaintiff and Dr. Vicari, and that those funds would be remitted in short order.  Anselmo never remitted said funds to plaintiff or to Dr. Vicari.

In early November 2007, plaintiff spoke with defendant Hemenway.  Plaintiff states that Hemenway promised that she would personally insure that the $12 million check was deposited in an account under her supervision, and that the bank would be instructed to send a wire to plaintiff immediately when the check cleared.  According to plaintiff, he held off taking legal action against Anselmo and M&M based solely on the promises and representations of Ms. Hemenway.  Plaintiff never received the wire.

**The Preliminary Injunction Hearing**

On February 25, 2008, this Court held a hearing on plaintiff's motion for preliminary injunction.  Defendants did not appear. This Court asked plaintiff whether Anselmo had notice of the preliminary injunction hearing.  Plaintiff explained that he faxed Anselmo and M&M this Court's February 21, 2007 Order to the same facsimile number that they have used all along.  Plaintiff explained that two weeks prior, Anselmo responded to a fax plaintiff sent to that same number when he contacted the Court to ask for additional time.

During the hearing, plaintiff clarified that all of the statements made in his Declaration were based on his own personal knowledge.  For example, plaintiff clarified that he knew about Anselmo's purchase of the foreign corporation because plaintiff represented the seller in that transaction.  The foreign corporation, Dolphin

Technologies, Inc. ("Dolphin Technologies"), is located in the Cayman Islands. Plaintiff also explained that, as a result of conversations he had with Anselmo throughout the summer of 2007, plaintiff learned of Anselmo's intention to divert funds earned from the sale of defendants' products to Dolphin Technologies.

**LEGAL ANALYSIS**

In order to obtain a preliminary injunction, the moving party must demonstrate:

> (1) some likelihood of succeeding on the merits, and (2) that it has "no adequate remedy at law" and will suffer "irreparable harm" if preliminary relief is denied. If the moving party cannot establish either of these prerequisites, the court's inquiry is over and the injunction must be denied. If, however, the moving party clears both thresholds, the court must then consider: (3) the irreparable harm that the non-moving party will suffer if preliminary relief is granted, balanced against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties.

*Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992) (citations omitted); *Ty, Inc. v. Jones Group Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

Here, plaintiff has demonstrated a likelihood of succeeding on the merits. Plaintiff's claims against Anselmo and M&M for breach of contract, unjust enrichment, conversion and fraud all arise out of a loan plaintiff made to these defendants. Based on the allegations in plaintiff's complaint, his Declaration and plaintiff's representations during the preliminary injunction hearing, it is clear that plaintiff lent Anselmo and M&M a substantial sum of money, these defendants promised to repay plaintiff, and to date, they have failed to do so. Accordingly, this Court finds that plaintiff has demonstrated a likelihood of success on his claims against Anselmo and M&M.

With respect to the adequate remedy at law and irreparable harm requirements,

plaintiff has satisfied these as well.  If defendants Anselmo and M&M divert the funds they earn to Dolphin Technologies in the Cayman Islands or otherwise transfer their assets outside of the United States, those funds will be beyond plaintiff's reach through traditional post-judgment attachment proceedings.  Such conduct by defendants would deprive plaintiff of his adequate remedy at law and cause him irreparable harm.  Plaintiff learned of Anselmo's intention to divert funds to Dolphin Technologies from Anselmo himself.  Furthermore, defendants Anselmo and M&M have continually frustrated plaintiff's efforts to collect the money owed to him.  Therefore, this Court finds that absent an injunction, plaintiff will suffer irreparable harm.

Next, we must consider the irreparable harm that defendants Anselmo and M&M will suffer if preliminary relief is granted, balanced against the irreparable harm to the plaintiff if relief is denied.  While Anselmo and M&M may suffer some harm from entry of an injunction, plaintiff seeks an injunction only to prevent these defendants from hiding or disposing of their assets in order to avoid the judgment plaintiff has obtained.  This Court finds that the balance tips heavily in favor of the plaintiff in this case.

This Court also must consider the public interest, meaning the consequences of granting or denying the injunction to non-parties.  Contrary to plaintiff's suggestion, the injunctive relief plaintiff requests could have consequences on non-parties.  For example, plaintiff seeks to enjoin and prohibit defendants Anselmo and M&M from transferring or selling any stock they may own or control in any public, private or closely held companies pending satisfaction of the judgment.  (¶ B, page 11 of plaintiff's motion).  Plaintiff also asks for an order barring defendants Anselmo and M&M from further encumbering any assets or from taking on a new debt until plaintiff's judgment

has been fully satisfied. (¶ I, page 12 of plaintiff's motion). Injunctive relief of this nature could affect other creditors of defendants Anselmo and M&M. Indeed, defendants Anselmo and M&M may need to sell stock or take on new debt in order to pay debts of other creditors or even to satisfy plaintiff's judgment. Based on the information before this Court, it is unclear whether these defendants have any additional creditors or where plaintiff stands in relation to other creditors. Because this Court is unaware of defendants' current financial obligations, we find it inappropriate to fashion an injunction that could adversely affect non-parties.

That being said, this Court finds that an injunction prohibiting defendants Anselmo and M&M from transferring any of their assets outside of the United States would not adversely affect non-parties. Similarly, we find that an injunction prohibiting defendants Anselmo and M&M from diverting funds earned from the sale of their products through or to Dolphin Technologies would not adversely affect non-parties.

Based on the foregoing, this Court finds that entry of a preliminary injunction is warranted here. Accordingly, this Court recommends that the District Court grant plaintiff's motion for preliminary injunction and enter an order stating that defendants Matthew Anselmo and M & M Marketing, LLC, jointly and individually, and anyone else with notice and knowledge acting in concert with them, are:

1. Prohibited from transferring any of their assets outside of the United States; and

2. Prohibited from diverting and/or routing any funds earned from the sale of their products through, or to, Dolphin Technologies, Inc.

This Court further recommends that the District Court deny plaintiff's additional

requests for injunctive relief.  First, plaintiff's request that the Court "bar defendants Anselmo and M&M from entering into or making any extraordinary or unusual business transfers or paying any extraordinary or unusual business expenses without prior leave of court, until plaintiff's judgment has been satisfied" is too vague.  (¶ C, page 11 of plaintiff's motion).  Federal Rule of Civil Procedure 65(d) requires that injunctions "be specific in terms" and "describe in reasonable detail . . . the act or acts sought to be restrained."  Fed. R. Civ. P. 65(d).  Because the phrases "extraordinary or unusual business transfers" and "extraordinary or unusual business expenses" are unclear, plaintiff's request in this regard fails to comply with Rule 65(d).  Second, plaintiff's various requests for financial information (set forth in ¶¶ D through H, pages 11-12 of plaintiff's motion) are more properly suited for a citation to discover assets.  As this Court noted during the hearing, the holding period relating to execution of the default judgment has passed and plaintiff is now free to issue a citation to discover assets.

Finally, plaintiff asks this Court to waive the security that Rule 65(c) requires.  The Seventh Circuit has recognized that "since the amount of the security rests within the discretion of the district judge, the matter of requiring a security in the first instance was recognized in *Urbain* as also resting within the discretion of the district judge."  *Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972) (citing *Urbain v. Knapp Brothers Mfg. Co.*, 217 F.2d 810, 815 (6th Cir. 1954)).  Based on the strong likelihood of success on the merits which plaintiff has demonstrated, we find that it is appropriate under these circumstances to waive the Rule 65(c) security requirement.  *Id.*

**CONCLUSION**

For the reasons set forth above, this Court recommends that the District Court grant plaintiff's motion for preliminary injunction in part and deny the motion in part. Specifically, this Court recommends that the District Court enter an order stating that defendants Matthew Anselmo and M & M Marketing, LLC, jointly and individually, and anyone else with notice and knowledge acting in concert with them, are:

1. Prohibited from transferring any of their assets outside of the United States; and

2. Prohibited from diverting and/or routing any funds earned from the sale of their products through, or to, Dolphin Technologies, Inc.

This Court further recommends that the District Court deny plaintiff's additional requests for injunctive relief. Finally, this Court recommends that the District Court waive the Rule 65(c) security requirement. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72. Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

                                        **ENTER:**

                                        */s/ Michael T. Mason*
                                        **MICHAEL T. MASON**
                                        **United States Magistrate Judge**

**Dated: February 27, 2008**