**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL L. BLUMENTHAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Court No.   07 C  7230** |
| **vs.** | ) | |
| | ) | **Judge Joan B. Gottschall** |
| **MATTHEW H. ANSELMO,** | ) | |
| **M & M MARKETING, L.L.C., and** | ) | **Magistrate Michael T. Mason** |
| **KATHRYN HEMENWAY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT HEMENWAY'S**
**MOTION TO DISMISS OR TRANSFER VENUE**

### Introduction

This lawsuit arises from two loans that were made by Plaintiff to Defendants Anselmo

and M & M Marketing. The loans were solicited from the Plaintiff (a citizen of this District) by

Defendants Anselmo and M & M Marketing. Defendant Anselmo first contacted the Plaintiff by

telephone in Chicago and then again during a visit here. Defendants Anselmo's and M & M

Marketing also contacted a co-investor and key witness, Dr. Frank Vicari who also resides in this

District. Additionally, some of Defendants Anselmo's and M & M Marketing's references were

and are in Chicago. Defendants Anselmo's and M & M Marketing directed numerous

correspondence into this District, sent UPS packages into this District, made personal visits and

appeals in this District, sent two (2) bad checks to the Plaintiff while in this District, which

checks were also cashed and processed in this District. The money loaned to the Defendants

originated from accounts and wires here in Chicago and the money owed Plaintiff was to be sent

to Chicago upon repayment. After months of trying to get the Defendants Anselmo and M & M

Marketing to pay the amount owed, and receiving excuses as to why these two Defendants could

not pay off their debt, Plaintiff was told the matter had been referred to the Defendants'

accountant who had been retained and directed by Defendants to call Plaintiff and Dr. Vicari.

The accountant, Co-Defendant Kathryn Hemenway, did initiate contact with Plaintiff and

Dr. Vicari at their respective offices in Chicago and environs, which were received by them in

this District. (*See* Exs. C & D.) Numerous phone calls and written correspondence from Co-

Defendant Hemenway followed those initial contacts. Defendant Hemenway initiated contact

with Plaintiff and Dr. Vicari, knowing full well that each resided and worked in Illinois. The

Plaintiff's Complaint alleges that it was Defendant Hemenway's intention to get the Plaintiff and

Dr. Vicari to rely on her representations about the existence of a check for over twelve million

dollars ($12,000,000.00), and the further fact that  Defendant Hemenway would ensure that

Plaintiff's (and Vicari's) share of those funds would be protected by her and sent to Plaintiff (and

Vicari) in repayment of Co-Defendants' debt. The Complaint also alleges that those

representations were made in order to prevent Plaintiff from taking immediate legal action

regarding the alleged funds. Both Plaintiff and Dr. Vicari explained to Defendant Hemenway

that they had no faith in Defendants Anselmo or M & M Marketing's representations or

promises and that, but for, Defendant Hemenway's involvement and representations, they would

have availed themselves of all legal avenues to recover their money including but not limited to,

the institution of suit, the institution of a request for an injunction and/or a turnover order against

the Defendants Anselmo and M & M Marketing, before the funds could clear a bank or be

transferred out of the country.  Defendant Hemenway knew that the Plaintiff (and Dr. Vicari)

were relying on her representations as to the existence of the funds, and as to her personal

involvement in ensuring that the debt was repaid by the transfer of the funds. (*See* Exhibits A, B

& C.) Given the foregoing facts, Defendant Hemenway knowingly directed her acts into the

State of Illinois and it was foreseeable that she would be subject to suit in Illinois if her representations were false.

## Legal Standard

As with most motions to dismiss, this Court must accept, "all well-pleaded allegations in the complaint as true." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)(citing *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 521 (7th Cir. 2001). Additionally since the federal rules require only notice pleading, and do not specifically require a plaintiff to allege facts regarding personal jurisdiction over a defendant in the Complaint, a plaintiff must, of necessity, supplement the complaints jurisdictional allegations with affidavits, declarations or other sworn evidence sufficient to sustain its burden. *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67 n.9 (3rd Cir. 1984); *Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67 n.9 (3rd Cir. 1984).

Further,

> [i]f personal jurisdiction is challenged under Rule 12(b)(2), the court must decide whether any material facts are in dispute. If so, it must hold an evidentiary hearing to resolve them, at which point the party asserting personal jurisdiction must prove what it alleged. Until such a hearing takes place, the party asserting personal jurisdiction need only make out a prima facie case of personal jurisdiction. *Id*. See also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1351, pp. 226-27 (2d ed. Supp. 2001).
> A federal court sitting in diversity must rely on the law of personal jurisdiction that governs the courts of general jurisdiction in the state where the court is sitting. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992).

*Hyatt Int'l Corp.*, 302 F.3d at 713. Turning to the Seventh Circuit's analysis of Illinois law regarding personal jurisdiction:

The Illinois long-arm statute was amended in 1989 to provide that an Illinois court "may . . . exercise jurisdiction on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). **Paragraph 2-209(c) is now coextensive with the due process requirements of the United States Constitution.** *FMC v. Varonos*, 892 F.2d 1308, 1310 n.5 (7th Cir. 1990). Thus "if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of due process, then the requirements of both the Illinois long-arm statute and the United States Constitution have been met, and no other inquiry is necessary." *L.B. Foster Co. v. Railroad Serv., Inc.*, 734 F. Supp. 818, 822 (N.D. Ill. 1990).

*Klump v. Duffus*, 71 F.3d 1368 ,1371 (7th Cir. 1995)(bold added for emphasis). Therefore, the

question before this Court is, "Would this Court's exercise of jurisdiction over the Defendant

comport with 'traditional notions of fair play and substantial justice'?" Plaintiff again returns to

the Seventh Circuit's analysis of this issue from *Klump* which provides:

Those [due process] standards have repeatedly been held to allow jurisdiction over a defendant who acts outside of a State's boundaries, but causes harm to an individual within the State, provided that it comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 85 L. Ed. 2d 528, 105 S. Ct. 2174 ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 79 L. Ed. 2d 790, 104 S. Ct. 1473; *Calder v. Jones*, 465 U.S. 783, 788-790, 79 L. Ed. 2d 804, 104 S. Ct. 1482. **Jurisdiction in such situations is proper where the defendant had "minimum contacts" with the forum State such that he had "fair warning" that he might be required to defend there, and where he has not presented a compelling case that it is unreasonable to do so.** *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-478, 105 S. Ct. 2174, 85 L. Ed. 2d 528. The requirement of "fair warning" meets due process standards by "giving a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444

4

U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559.

*Klump*, 71 F.3d at 1371-72 (bold added for emphasis). Lastly, "the main factor in the due process

analysis is 'foreseeability' of being subjected to suit in the forum state."*Daniel J. Hartwig Assoc.,*

*Inc. v. Kanner*, 913 F.2d 1213, 1217-1218 (7ᵗʰ Cir. 1990) (quoting *Heritage House*, 906 F.2d at

283.). "Once it has been established that a defendant has purposely directed his activities at the

forum state, the defendant must present a compelling case that jurisdiction there would be

unreasonable. *See Burger King*, 471 U.S. at 477." *Electroplated Metal Solutions, Inc. v. Am.*

*Servs.*, 2008 U.S. Dist. LEXIS 8999, *12 (N.D. Ill. Feb. 7, 2008)

## Argument

### I.    Defendant Hemenway's Acts Directed into the State of Illinois
###       are Sufficient to Subject her to Personal Jurisdiction in Illinois

A professional can reasonably foresee being "hauled into court" in a state where they

derived economic benefit from services provided outside of the forum state, but where the effect

of the services was known to be directed towards residents of the forum state. *See Ores v.*

*Kennedy*, 218 Ill. App. 3d 866, 872-3, 578 N.E.2d 1139, 1144-5, 161 Ill. Dec. 493 (1ˢᵗ Dist.

1991). The Complaint, and the declarations attached to this response, all allege that in the two

(2) months leading up to the filing of the instant lawsuit, the Plaintiff and Dr. Vicari had repeated

contact with Defendant Hemenway regarding their expectation of receipt of over $ 2.5 million

that Plaintiff and Dr. Vicari[1] were owed by Defendants Anselmo and M &M Marketing. (*See*

Compl. ¶¶ 49, 50, 51; 80-85; *See also* Exhibit A [Blumenthal Declaration] ¶¶ 3, 10 & 11 and

Exhibit B [Vicari Declaration] ¶¶ 4,10 & 11.) Further, Defendant Hemenway is alleged to have

---

[1] Plaintiff and Dr. Vicari are citizens of Illinois, and both reside and work in this District. Further, both the Plaintiff and Dr. Vicari were in Illinois when every communication with Defendant Hemenway occurred. (*See* Compl. ¶¶ 1, 5 & 6; *See also* Exhibit A [Blumenthal Declaration] ¶¶ 13 and Exhibit B [Vicari Declaration] ¶¶ 14.

5

directed false representations regarding her role in transferring $ 2.2 million in funds owed to the Plaintiff. (*See* Compl. ¶¶ 52 54 & 85; *See also* Exhibit A [Blumenthal Declaration] ¶¶ 12 and Exhibit B [Vicari Declaration] ¶¶ 12.)  Finally, Defendant Hemenway was the one who initiated contact with the Plaintiff, contrary to her sworn testimony in paragraph 7 of her Affidavit. (*See* Ex. D which is a record of calls received by Declarant on his cell phone.) Defendant Hemenway held herself out initially as Defendants Anselmo's and M &M Marketing's accountant, and *only as their accountant*. (*See*  Exhibit A [Blumenthal Declaration] ¶¶ 3 and Exhibit B [Vicari Declaration] ¶¶ 4.)

Defendant Hemenway's only response to the foregoing is the bald assertion that the she does not have sufficient minimum contacts with the State of Illinois. (*See* Motion to Dismiss, ¶ 12; Hemenway Affidavit (1/28/08), ¶ 10.) However, as discussed above, a defendant only needs to have derived economic benefit from acts affecting individuals in the Illinois, before an Illinois court has jurisdiction over the individual. *See Ores v. Kennedy*, 218 Ill. App. 3d 866. Defendant Hemenway admits that she was retained by Defendant Anselmo in November 2007, that her clients (Defendants Anselmo and

M & M Marketing) involved her in this dispute, and presumably Defendant Hemenway has derived economic benefit from her direct involvement in the dispute that lead to this lawsuit. (*See* Hemenway Affidavit (1/28/08), ¶¶ 3 and 8.)  Even though the law is clear that the foregoing facts are the ones controlling this Court's decision on the motion to dismiss, the Plaintiff will now address the material misrepresentations and red herrings in Defendant Hemenway's motion to dismiss and accompanying affidavit.

Hemenway's first misrepresentation is that her sole contact with the Plaintiff was the returning of the Plaintiff's phone calls. (*See* Motion to Dismiss, ¶ 8; Hemenway Affidavit ¶ 7.)

6

Hemenway initiated phone calls to Plaintiff and Dr. Vicari and sent written communications at the behest of her clients, Defendants Anselmo and M & M Marketing in furtherance of their interests. (*See* Ex. D and Compl. ¶¶ 49-51; 80-85; *See also* Exhibit A [Blumenthal Declaration] ¶¶ 3, 10 & 11; Exhibit B [Vicari Declaration] ¶¶ 4 & 10; Group Exhibit C [Hemenway faxes].) The purpose of those phone calls and written correspondence were not to settle a dispute, but rather to assure the Plaintiff that Defendant Hemenway had verified that the Defendant had the Plaintiff's and Dr. Vicari's money, and that a wire transfer had been initiated. (*See* Compl. ¶¶ 50-51; 80-85; *See also* Exhibit A [Blumenthal Declaration] ¶¶ 13; Exhibit B [Vicari Declaration] ¶¶ 13 and Group Exhibit C.) Additionally, contrary to Hemenway's assertion, her involvement in this matter was as Defendants Anselmo's and M & M Marketing's accountant. *See* Exhibit A [Blumenthal Declaration] ¶¶ 3 and Exhibit B [Vicari Declaration] ¶¶ 4.) It was only after the Plaintiff and Dr. Vicari received a fax from Defendant Hemenway, that Plaintiff or Dr. Vicari learned that Defendant Hemenway was also an attorney. (*See* Exhibit A [Blumenthal Declaration] ¶¶ 10 and Group Exhibit C.)

The foregoing factual disputes aside, this Court has "specific" jurisdiction over Defendant Hemenway.

> In determining whether exercising jurisdiction comports with "traditional notions of fair play and substantial justice," the Court considers the following five factors to determine whether it is reasonable to require the defendant to litigate in the forum state: (1) the burden on the defendant of defending in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the action; and (5) the shared interests of the several states in advancing fundamental social policies..

*Electroplated Metal Solutions, Inc. v. Am. Servs.*, 2008 U.S. Dist. LEXIS 8999, *12 (N.D.

Ill.2008) (citing *World-Wide Volkswagen*, 444 U.S. at 292).

In this case all five factors favor adjudication of this dispute in this District. Defendant Hemenway directed her actions into the state of Illinois by making misrepresentations to the Plaintiff on behalf of her clients. Contrary to the legal conclusion in her affidavit, Defendant Hemenway had knowledge before conveying false information to the Plaintiff, that she was making promises to an individual who resided in Illinois. She also had reason to know, and based on her actions did know, that the Plaintiff was relying on her promises when he decided to delay filing a lawsuit against her clients. *See* Exhibit A [Blumenthal Declaration] ¶¶ 3, 5, 6, 7, 8, 9 & 10.  Given that Defendant Hemenway's motion to dismiss lacks facts and only makes legal conclusions, the Plaintiff is forced to explain why there are no set of facts that prevent this case from proceeding in this District. Based on Defendant Hemenway's motion, the only way for a person to be subject to personal jurisdiction in a state is to: (1) be a resident of the state; (2) physically visit the state; or (3) solicit business or enter into a contract in the state. However, based on the precedent cited above, Defendant Hemenway's assertions are flat out wrong. Defendant Hemenway's conduct was designed to affect an Illinois resident, she knew the amount of money involved and that she was promising to take control of it and deliver it to the Plaintiff in Illinois, and it is not unreasonable to expect to be sued in Illinois when one makes such promises, then fails to deliver on them or ensure the delivery of over 2.5 million dollars to a person in Illinois.

As for the remaining four factors, Defendant Hemenway has provided no explanation as to how these factors favor her position. Notwithstanding Hemenway's failure to address any of these factors, Illinois has a clear interest in seeing that money owed to its residents is repaid and that its residents are not defrauded; the Plaintiff's interest in effective relief and the judicial

8

systems interests in efficient resolution of the action are best served by proceeding in this District, because *inter alia* the harm occurred in Illinois and the majority of witnesses are in Illinois; and finally the shared interest of the states best served by not requiring injured parties to litigate in forums that are convenient for the defendant, but far from the citus of the injury and evidence relevant thereto.

  **II.**  **Venue is Proper in this District Because the Plaintiff and Several Witnesses Reside in this District, the Loans which Were Not Repaid was Solicited in this District, and Defendant Hemenway Directed Her Representations into this District**

  Once this Court finds that it has jurisdiction, it will also find that this district is the proper venue for this litigation. The Plaintiff return's to the Seventh Circuit's decision in *Hyatt Int'l Corp.*, in support of his position. The Seventh Circuit has stated:

> When a plaintiff chooses her own forum, it is normally reasonable to assume that the choice is convenient. *Piper*, 454 U.S. at 256. The plaintiff is, after all, master of the complaint, *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 880 (7th Cir. 2001), and this includes the choice of where to bring suit. In normal instances, therefore, a certain deference is due to the plaintiff's choice of forum with respect to convenience. *See*, e.g., *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 553 (7th Cir. 2001).

*Hyatt Int'l Corp.*, 302 F.3d at 718. Additionally, "there is a strong preference for conducting the litigation in the plaintiff's chosen forum, and that only rare circumstances make honoring this choice inequitable. 'Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *ISI Int'l, Inc.*, 256 F.3d at 553.

  Defendant Hemenway moved in the alternative to transfer venue based on 28 U.S.C. § 1391. However, this request is frivolous as 28 U.S.C. § 1391(b)(2) provides that venue is proper in, "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

Given that *inter alia*: this Court has jurisdiction, the Plaintiff lives here, the misrepresentations were directed into this district,[2] much of the same evidence regarding Plaintiff's case against Defendants Anselmo and M & M Marketing is applicable to Defendant Hemenway and Defendant Hemenway has done nothing to show that litigating this case in the Northern District of Illinois would be "unreasonable," this Court should deny Defendant Hemenway's motion to transfer venue.

### Conclusion

The Plaintiff has more than met his burden of making a *prima facie* case of personal jurisdiction. Defendant Hemenway, other than making bald assertions that this Court does not have jurisdiction, has failed to refute the allegations in the Complaint, nor has she provided facts which show that she could not reasonably foresee getting "hauled into court" in Illinois if her representations were false. It is only reasonable to expect that if one misrepresents the existence of over twelve million dollars, and her role and ability to deliver two million dollars from said amount; that she is going to get sued and sued in a court where the injury occurred.

**WHEREFORE**, the Plaintiff hereby requests that this Court deny Defendant Hemenway's motion to dismiss under Fed. R. Civ. P. 12(b)(2), or in the alternative, transfer venue, in its entirety.

---

[2] "The general rule is that where tortious acts are committed over the telephone, the situs of the tort is the place where the phone call was received." *Rose v. Franchetti*, 713 F. Supp. 1203, 1209 (N.D. Ill. 1989)(citing *Harvey v. Price*, 603 F. Supp. 1205, 1209 (S.D. Ill. 1985)). Also worth noting is the *Rose* court's determination that a single phone call into Illinois can be sufficient to satisfy the requirements of due process. *See Id.*

Respectfully submitted,

**MICHAEL L. BLUMENTHAL, Plaintiff**

**By:   /s/   Michael L. Blumenthal**
          **One of His Attorneys**

**Martin A. Blumenthal**
**Attorney for Michael L. Blumenthal**
**1 Northfield Plaza - Suite 300**
**Northfield, Illinois   60093**
**(847) 441-2687**
**e-mail: marty@blumenthallaw.com**
**Attorney I.D.# 6180069**

**Michael L. Blumenthal, Esq.**
**Milton M. Blumenthal & Associates**
**77 West Washington Street  - Suite 1720**
**Chicago, Illinois 60602**
**(312) 372-3566**
**e-mail: mike@mmblumenthal.com**
**Attorney I.D. # 6183007**