**EXHIBIT F**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL L. BLUMENTHAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 07 C 7230 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| MATTHEW H. ANSELMO, ) | |
| M & M MARKETING, LLC, and ) | |
| KATHRYN HEMENWAY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is a motion to dismiss for lack of jurisdiction and improper venue filed by defendant Kathryn Hemenway ("Hemenway"). For the reasons stated below, the motion is granted.

### I. BACKGROUND

Plaintiff, Michael L. Blumenthal ("Blumenthal"), an Illinois resident, filed a complaint against three defendants in regard to a loan Blumenthal made to defendants Matthew H. Anselmo ("Anselmo") and M & M Marketing, LLC ("M&M"). Blumenthal alleges that Hemenway, a Nebraska resident, agreed to take charge of the repayment dispute between Anselmo and Blumenthal and to personally guarantee that Anselmo had deposited a check that was large enough to cover the debt and would send funds to Blumenthal as soon as the check cleared. Blumenthal alleges that, despite assurances from Hemenway, he never received any funds. Blumenthal filed a six-count complaint, bringing it in federal court as a diversity case. Blumenthal directed two counts exclusively to Hemenway: Count V for promissory estoppel and

1

Count VI for breach of contract. Hemenway moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or, in the alternative, for improper venue pursuant to Rule 12(b)(3).

## II. ANALYSIS

**A.   Legal Standard**

  1.   Rule 12(b)(2)

Rule 12(b)(2) provides that a party must assert a defense for lack of personal jurisdiction by motion before a responsive pleading is filed. Fed. R. Civ. P. 12(b)(2). Liberal pleading standards in federal court do not require a plaintiff to plead facts alleging personal jurisdiction in the complaint. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781-82 (7th Cir. 2003) (citing *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998)). However, the plaintiff bears the burden of establishing jurisdiction once the defendant challenges it pursuant to Rule 12(b)(2). *Id.* at 782 (internal citations omitted). At the motion to dismiss stage, a court may hold an evidentiary hearing to determine jurisdiction, in which case the plaintiff must prove jurisdiction is proper by a preponderance of the evidence, or it may rule based on the submission of written materials, in which case the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). "In evaluating whether the *prima facie* standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue Research Found.*, 338 F.3d at 782 (internal citations omitted).

When the parties dispute material facts supporting personal jurisdiction, the court "must hold an evidentiary hearing to resolve them." *Hyatt Int'l Corp.*, 302 F.3d at 713. However, it

can allow the case to proceed with a *prima facie* jurisdictional determination and "defer the ultimate determination of factual disputes until the completion of discovery or trial." *See Hoffa Eng'g, LLC v. Craney*, 06-CV-481, 2007 WL 831820, *4 (S.D. Ind. Mar. 12, 2007) (concluding that the option of deferral harmonizes the Seventh Circuit's mandatory requirement of an evidentiary ruling with its acceptance of a *prima facie* showing in personal jurisdiction disputes).

2.   Personal Jurisdiction

In a diversity case, a federal court can assert personal jurisdiction over a non-resident party only if a court of the forum state could exercise jurisdiction. *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995). In this case, the court must make two inquiries: (1) whether an Illinois statute grants personal jurisdiction over the defendant; and (2) whether such jurisdiction comports with the requirements of the federal Due Process Clause. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992); *Rollins v. Ellwood*, 565 N.E.2d 1302, 1314 (Ill. 1990). The Illinois jurisdictional statute contains a "catch all" provision that allows a court to assert personal jurisdiction over a defendant based on "any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."[1] 735 Ill. Comp. Stat. 5/2-209(c). This, in effect, conflates the statutory and constitutional analyses such that

---

[1] Blumenthal does not disclose the precise jurisdictional basis upon which he relies. As Hemenway argues, Blumenthal has not put forth cognizable arguments for general jurisdiction over Hemenway. Therefore, the court will consider only whether it has specific jurisdiction. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (noting that failure to allege systematic contacts with Illinois results in a waiver of a general jurisdiction argument). Because Blumenthal's arguments primarily deal with whether jurisdiction based on Hemenway's alleged business outreach comports with due process, the court assumes he is relying on § 2-209(c). *See Hyatt Int'l Corp.*, 302 F.3d at 714 (noting that § 2-209(c) "precludes the narrower approach" of looking to this section only if another, more specific, section of the Illinois long-arm statute does not apply).

"personal jurisdiction may be asserted so long as it does not offend the guarantees of due process provided by the Illinois and United States Constitutions." *Sabados v. Planned Parenthood of Greater Indiana*, 882 N.E.2d 121, 125 (Ill. App. 2007). *Accord Hyatt Int'l Corp.*, 302 F.3d at 715 (reviewing the facts to ensure that personal jurisdiction was proper under the Illinois statute, Illinois Constitution, and U.S. Constitution). However, the Illinois long-arm statute contains language that "may well restrict the power that the courts of [Illinois] have to bring nonresidents before them to a greater extent than do the Federal due process clause and the 'minimum contacts' standard." *Rollins*, 565 N.E.2d at 1314.

Consistent with federal Due Process requirements, a court may assert jurisdiction where the defendant has minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In order for jurisdiction to be fair, the defendant must have "purposefully established minimum contacts within the forum state" such that it "should reasonably anticipate being haled into court" there because it has "purposefully avail[ed] itself of the privilege of conducting activities" there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985) (internal quotations and citations omitted). Thus, there must be a nexus between the lawsuit and the minimum contacts with the forum state. *See Hyatt Int'l Corp.*, 302 F.3d at 716 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The Seventh Circuit has observed that, for most cases, "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp.*, 302 F.3d at 715. Thus, in most situations, a single constitutional analysis is required because the outcome under both would be the same. However, the Illinois

4

Supreme Court has cautioned that Illinois due process protections are "separate and independent" from federal due process protections. *Rollins*, 565 N.E.2d at 1316. This "theoretically creat[es] a possibility that personal jurisdiction could be satisfied under the federal constitution, but not the Illinois Constitution." *Sabados*, 882 N.E.2d at 125 n.2 (discussing commentary in *Rollins*). Pursuant to Illinois constitutional limitations, jurisdiction may be "asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins*, 565 N.E.2d at 1316.

**B.   Arguments**

As an initial matter, the court resolves the factual dispute regarding the quantity of contact between Hemenway and Blumenthal in Blumenthal's favor, as it must, and discounts Hemenway's averment that the "sole contact" she had with Blumenthal was the return of a phone call. *Compare* Def.'s Mot. to Dismiss Ex. A, Hemenway Aff. ¶ 7 (averring a single phone call of less than twenty minutes' duration), *with* Pl.'s Resp. Ex. A, Blumenthal Aff. ¶¶ 3, 10 (averring multiple written and oral communications).[2]

Blumenthal contends that these various contacts were purposefully directed to Illinois and that Hemenway should have reasonably anticipated a lawsuit in Illinois for failure to follow through on promises made in those communications. He focuses on a federal due process "minimum contacts" analysis, giving scant attention to the cautions of the *Rollins* court and failing to address, in any substantive way, Hemenway's argument that jurisdiction is barred by

---

[2]In her reply, Hemenway seems to concede that she took part in multiple calls and sent correspondence to Blumenthal, as he alleges, but does not detail the specifics, or correct her earlier averment, in her second affidavit. *See* Def.'s Reply at 5.

5

the fiduciary-shield doctrine because she acted solely as a representative of Anselmo and M&M.[3]

The fiduciary shield doctrine bars jurisdiction over a defendant whose conduct was performed on behalf of an employer. *Rollins*, 565 N.E.2d at 1313. In *Rollins*, the Illinois Supreme Court explicitly recognized that the fiduciary shield doctrine was established in Illinois. *Id.* at 1314. It noted the doctrine limited the jurisdictional power of the court because of "the extent to which Illinois' long-arm statute allows Illinois courts to exercise personal jurisdiction over nonresident defendants and . . . the scope of the due process clause of the Illinois Constitution." *Id.* Thus, the court explicitly carved out, for situations in which the fiduciary shield doctrine applies, an exception to the generally coextensive analysis required under the federal and Illinois constitutions. *Id.* at 1318. *Cf. Hyatt Int'l Corp.*, 302 F.3d at 715 (observing that, in most cases, "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction").

In *Rollins*, the plaintiff alleged that a Baltimore police officer acted tortiously in restraining and transporting him when he was extradited from Illinois to Maryland after being falsely identified. 565 N.E.2d at 1305. The court found jurisdiction over the police officer to

---

[3]Hemenway does not explicitly invoke the "fiduciary shield doctrine" until her reply. However, a review of her initial motion shows that she raised the factual bases of the defense in her motion. *See* Def.'s Mot. ¶¶ 4 (stating Hemenway was hired to represent Anselmo and M&M); 9 (stating Hemenway's "sole participation in this matter was to act as Anselmo's and M&M's attorney"). Blumenthal does not cite to *Rollins*, the main Illinois case that discusses the doctrine, but he does cite to *Hyatt Int'l Corp.*, which discusses the import of the *Rollins* decision on Illinois jurisprudence regarding the outer limits of jurisdiction on out-of-state defendants. *See* Pl.'s Resp. at 3. The court concludes, therefore, that Blumenthal was not blindsided by the argument or unaware of the relevant legal authority and was not, therefore, deprived of the opportunity to respond.

comport with federal due process because "Federal due process considerations do not compel a court to decline jurisdiction over a person whose conduct in, and connection with, a forum were engendered solely by his employment and not for any personal interests, at least when the person's conduct is allegedly tortious and engaged in with knowledge that effects will be felt in the forum State." *Id.* at 1315 (citing *Calder v. Jones*, 465 U.S. 783 (1984), where the U.S. Supreme Court found jurisdiction proper over an author and editor of an allegedly libelous magazine article).

The court then reviewed Illinois constitutional considerations and found that the "nature and quality" of the officer's actions, tortious or not, "were defined and characterized by his status as a police officer employed" by the police department and State of Maryland and that his "conduct in Illinois was a product of, and was motivated by, his employment situation and not his personal interests." *Id.* at 1318. In this situation, the court held that the fiduciary shield doctrine should bar jurisdiction over the defendant officer, reasoning that the Illinois due process clause rendered it "unfair and unreasonable . . . to assert personal jurisdiction over an individual who seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal." *Id.* The court so held notwithstanding its conclusion that the police officer had the "necessary minimum contacts with Illinois . . . so that Federal due process d[id] not preclude Illinois courts from exercising personal jurisdiction over him." *Id.* at 1315. Thus, an employee doing his or her job, or an agent acting on behalf of a principal, is generally not subject to jurisdiction of Illinois courts, whether or not jurisdiction comports with

federal due process.[4]

Attorneys are agents of their clients.[5] *See, e.g., Cannon-Stokes v. Potter*, 453 F.3d 446 (7th Cir. 2006) ("A lawyer is the client's agent . . . ."); *People v. Wilkerson*, 463 N.E.2d 139, 143-44 (Ill. App. 1984) ("The relationship between a lawyer and her client is that of agent and principal . . . ."). The few cases that exist regarding the applicability of the fiduciary shield doctrine to attorneys confirm that, where an attorney is acting at the request of a client to further the goals of that client, the doctrine applies to bar jurisdiction. *See, e.g., Zeidler v. A & W Restaurants, Inc.*, 03 C 5063, 2004 WL 1166635, *3 (N.D. Ill. May 24, 2004) (finding the fiduciary shield applied to an in-house attorney where the claims were violation of the Illinois Franchise Disclosure Act and breach of contract); *Arnold v. Goldstar Fin. Sys., Inc.*, 01 C 7694, 2002 WL 1941546, *2 (N.D. Ill. Aug. 22, 2002) (finding no jurisdiction over an in-house attorney acting in accordance with employer's instructions for a breach of contract claim). In contrast, where an attorney is acting for her own interests or where the client does not dictate the action taken, the doctrine does not apply. *See, e.g., Lexecon, Inc. v. Milberg, Weiss, Bershad, Specthrie & Lerach*, 92 C 7768, 1993 WL 179789, *4 (N.D. Ill. May 24, 1993) (finding the doctrine inapplicable to protect "lawyers who, without explicit direction of a client" commit tortious actions during litigation).

---

[4]There are two generally recognized exceptions to the fiduciary shield doctrine, namely: (1) where personal interests motivated the individual's actions; or (2) where the individual's actions are discretionary. *See Starr v. Int'l Brotherhood of Elec. Workers, Int'l Union*, 03 C 1760, 2003 U.S. Dist. LEXIS 14890, *13 (N.D. Ill. Aug. 27, 2003) (internal citations omitted). Neither are applicable here.

[5]Accountants are also agents of their clients. Therefore, whether Hemenway identified herself to Blumenthal as an accountant or a lawyer is irrelevant to the fiduciary shield analysis.

The fact that Hemenway was acting on behalf of Anselmo and M&M when she communicated with Blumenthal is undisputed. Hemenway avers that she is an attorney licensed in Nebraska, she was hired by Anselmo and M&M in November 2007 to represent them in their dispute with Blumenthal, and that all of her dealings in this matter were as an attorney. Pl.'s Mot. to Dismiss Ex. A., Hemenway Aff. ¶¶ 1-3, 8. Blumenthal admits – in his complaint and in his response to the motion to dismiss – that, from the very beginning, he knew Hemenway was acting as Anselmo and M&M's representative. *See* Compl. ¶ 49 (stating that during Blumenthal's first communication with Hemenway she "claimed to be Mr. Anselmo's attorney and tax accountant"); *id.* ¶ 79 ("Defendant Hemenway represented herself as the tax accountant and attorney for defendant."); Pl.'s Resp. at 2 (stating that Blumenthal was told that "the matter had been referred to the Defendants' accountant" and that "[t]he accountant, . . . Hemenway, did initiate contact with Plaintiff"); *id.* at 6 (noting that "Hemenway held herself out initially as [Anselmo and M&M's] accountant"); *id.* at 7 (stating that Hemenway's involvment was as an accountant and that Blumenthal later learned she was a lawyer). Blumenthal even states in his brief that "Hemenway initiated phone calls to Plaintiff . . . and sent written communications *at the behest of her clients*, Defendants Anselmo and M & M Marketing[,] in furtherance of their interests." *Id.* at 7 (emphasis added)). Thus, even construing the facts in favor of Blumenthal, Hemenway acted as an agent of another in her dealings with Blumenthal, and, absent an exception, the fiduciary shield doctrine applies to bar jurisdiction.

Blumenthal's sole argument that could be construed to invoke an exemption to the fiduciary shield doctrine is that Hemenway was acting on her own behalf because she was

9

earning fees from her representation of Anselmo and M&M.[6] But that does not establish that she was acting for her own personal reasons; rather, it shows that she was employed by a client to act as she did. Blumenthal does not allege that Hemenway committed any tort or acted of her own volition. Blumenthal has failed to show an exception to the fiduciary shield doctrine applies and has consequently failed to make out a *prima facie* case that, consistent with the due process restrictions inherent in the Illinois long-arm statute, the court can exercise jurisdiction over Hemenway. The court does not, therefore, need to reach the second step of the personal jurisdiction analysis: whether jurisdiction comports with federal due process requirements.

### III. CONCLUSION

For the reasons stated above, the court grants defendant Hemenway's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) [14]. Consequently, the court does not reach Hemenway's Rule 12(b)(3) arguments regarding incorrect venue.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: May 22, 2008

---

[6]The cases Blumenthal cites that deal with fiduciary claims are inapposite because they deal with plaintiffs suing their *own* fiduciaries for acting contrary to the plaintiff-principal's interests. *See, e.g., Klump*, 71 F.3d at 1372 (finding jurisdiction over a North Carolina attorney who failed to file a complaint in Illinois within the relevant statute of limitations where the attorney knew plaintiff used to live in Illinois, and that the case involved an Illinois state law cause of action and Illinois parties); *Ores v. Kennedy*, 578 N.E.2d 1139, 1144 (Ill. App. 1991) (finding jurisdiction where a Texas attorney, who was sued for contribution by an Illinois firm that was itself sued for legal malpractice by the plaintiff, directly corresponded and telephoned the plaintiff and other stakeholders in Illinois).