# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL L. BLUMENTHAL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MATTHEW H. ANSELMO, et al., ) <br> ) <br> Defendants. ) | Case No. 07 C 7230 <br><br> Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

### BACKGROUND

Judgment against Defendants M & M Marketing, LLC ("M & M") and Matthew H. Anselmo on Count I was entered in the amount of $2,200,000, plus prejudgment interest, on January 31, 2008. A default on Counts III and IV as against M & M and Anselmo was entered on May 29, 2009, and the court requested briefing from Blumenthal explaining how his complaint entitled him to punitive damages on these claims. The court also dismissed Count II on May 29, 2009. Blumenthal has filed a memorandum of law, and a declaration, in support of his damages claims.

The court has also been advised that an Involuntary Petition in Bankruptcy was initiated against M & M on June 3, 2009. An automatic stay related to M & M is therefore necessary. 11 U.S.C. § 362(a).

### ANALYSIS

**I.   Background Facts**

Anselmo being in default, all well-pleaded facts contained in the complaint are to be taken as true, except as to those relating to the amount of damages. Fed. R. Civ. P. 8(b)(6); *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994). However, this applies to well-pleaded facts only, not to legal

conclusions, and "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit to mere conclusions of law." *Id.* at 1407 (quoting 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Fed. Prac. & Proc. § 2688 at 447-48 (1983)). The facts must come from the complaint only, for this is the only document properly served upon Anselmo, and the only document which Anselmo is deemed to have admitted as a result of his default. *Id.*.

The basic facts in Blumenthal's complaint are as follows. Blumenthal was approached by Anselmo in May, 2007, representing that he and his company, M & M, had a business opportunity with Northrup Grumman Corp., for which Anselmo needed funding. Anselmo represented that an order from Northrup Grumman Corp. already existed for shirts that would be designed by M & M, but that he was short on operating capital and needed $1,200,000 from Blumenthal and a third party, Dr. Vicari, to complete the order. An agreement was reached whereby Blumenthal provided $585,000 in two payments, on May 14, 2007, and on May 25, 2007. On the same day, Anselmo requested an additional $600,000, and he promised to return all of the original principal, plus 25% interest, on or before June 6, 2007.[1]

Anselmo failed to make the payment required on June 6, 2007, and made misrepresentations to Blumenthal about when payment would be made. Anselmo never made good on the contract.

---

[1] Anselmo was promising to pay a 25% return on the principal, which Blumenthal describes as "interest." which was accruing over about a 20 day period, from May 14 to June 6, 2007 (though the amount of time was actually less since Blumenthal made three payments, on May 14, May 25, and May 29). Using the May 14 date for a conservative estimate, this is equal to approximately a 37.5 interest rate per month (25% for 20 days, times 1.5, equals 37.5% for 30 days). If this interest rate were compounded monthly, the annualized rate of return would be over 4,567%.

## II. Judgment on Count III, Conversion

Judgment on Count III, the conversion claim, is denied. To plead a conversion claim, a plaintiff must plead four elements: (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Cruthis v. Firstar Bank, N.A.*, 822 N.E.2d 454, 463, (Ill. App. Ct. 2004). However, a breach of contract does not automatically gives rise to a claim for conversion; conversion requires some additional tort, something beyond the mere failure to perform on the contract. *See IOS Capital, Inc. v. Phoenix Printing, Inc.*, 808 N.E.2d 606, 615 (Ill. App. Ct. 2004) (Cook, J., concurring) (noting that simply failing to pay a debt does not give rise to conversion claim). This distinction between breach of contract and conversion has also been characterized as follows: "It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use." *In re Thebus*, 483 N.E.2d 1258, 1261 (Ill. 1985). For example, if a patron gives a waiter a $500 bank note to pay a bill of $6, but the waiter instead leaves with the bank note, then a conversion claim is appropriate—the note was owned at all times by the patron, and the patron never intended to relinquish ownership for any period of time to the waiter. *See id.*

Here, Blumenthal did relinquish ownership during the pendency of the contract. The money was to be returned to him, with substantial interest, on June 6, 2007, but Blumenthal has not established any facts that support his claim that he retained control over the funds throughout that period, nor that they would have been available to him prior to June 6, 2007. His complaint does state that "Plaintiff has an absolute right to his funds based upon the agreement made with the Defendants. That agreement required repayment on or before June 6, 2007." Compl. ¶ 67. But of

course, that is the point—Blumenthal had a contract which established his right to the funds, *on or after* June 6, 2007. He had no right to retrieve his money prior to June 6. And he certainly did not have a right prior to June 6, 2007, to the original principal *plus the 25 percent interest*—the terms of the agreement between the parties—which is what he is asking this court to award him on his conversion claim.

In his declaration, and in Count IV of the Complaint, Blumenthal contends that the original agreement was fraudulently induced. This potentially could state a basis for a theory of conversion as to the original principal given by Blumenthal to the Defendants (but still not to the resulting interest, which only came into being because of the contract), for to some extent Blumenthal is alleging that Anselmo misappropriated the funds. However, this is a legal stretch—Blumenthal gave Anselmo the funds to invest them, and suggests that Anselmo diverted the funds for a purpose other than what he represented to Blumenthal. But this is merely a claim of fraudulent inducement, which has one of two remedies: rescission of the contract, or performance and a lawsuit for damages. *Nessler v. Nessler*, 902 N.E.2d 701, 706 (Ill. App. Ct. 2008). This is hardly an automatic and unconditional right to immediate possession.

Furthermore, the allegations in Count IV do not appear, by reference or otherwise, in Count III. This was possibly a mistake in drafting, but it is not a mistake this court can correct.

**III.    Count IV, Fraud**

Blumenthal also alleges that Anselmo fraudulently induced the agreement and the loan. As the Illinois Court of Appeals has explained:

> Generally, a party may not recover in tort for what is essentially a breach of contract. However, a well-recognized exception exists where the fraud vitiates the making of the contract itself, in other words, where the plaintiff is fraudulently induced to enter into the contract in the first place. Plaintiff's complaint may fairly be read as alleging that he would not have entered into the contract with defendant but for the

4

misrepresentations. There is thus no bar to plaintiff maintaining a separate cause of action based on fraud in the inducement.

*Johnson v. George J. Ball, Inc.*, 617 N.E.2d 1355, 1361 (Ill. App. Ct. 1993). Blumenthal has alleged in his complaint that the contract was induced by knowing misrepresentations as to the purpose of the money being lent by Blumenthal, and that Blumenthal relied on those misrepresentations. Rule 9 of the Federal Rules of Civil Procedure requires that "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9. The circumstances constituting fraud are sufficiently established in the complaint. Blumenthal goes into detail about Anselmo's representations regarding the purpose of the loan, and since intent and knowledge of falsity can be generally alleged, this is also satisfied. *See* Compl. ¶¶ 71–73.

Damages for fraud are limited to the amount actually lost by the fraud, not the amount that could have been gained. *See Smith v. Bolles*, 132 U.S. 125, 129 (1889). As Blumenthal acknowledges, this is $1,585,000—the amount actually loaned to Anselmo. Of course, this is a smaller amount than Blumenthal has already been awarded on his breach of contract claim, and since these allegations arise out of the same operative facts, no further recovery would be possible, as it would constitute a double recovery. However, the fraud claim does permit Blumenthal to request punitive damages.

On the issue of punitive damages in a diversity action, the Seventh Circuit has noted the following general procedures:

> A federal court sitting in diversity looks to the law of the state, Illinois, in determining the appropriateness of punitive damages. *See West v. Western Cas. & Sur. Co.*, 846 F.2d 387 (7th Cir.1988). Illinois courts do not favor punitive damages and insist that plaintiffs must establish "not only simple fraud but gross fraud, breach of trust, or 'other extraordinary or exceptional circumstances clearly showing malice or willfulness.'" *AMPAT/Midwest, Inc. v. Ill[.] Tool Works, Inc.*, 896 F.2d 1035, 1043 (7th Cir. 1990) (citation omitted) . . . . The Illinois Supreme Court has noted

> that "[b]ecause of their penal nature, punitive damages are not favored in the law, and courts must be cautious in seeing that they are not improperly or unwisely awarded." *Deal v. Byford*, [537 N.E.2d 267, 272 (Ill.] 1989); *see also Home Sav. & Loan Ass'n of Joliet v. Schneider*, [483 N.E.2d 1225, 1228 (Ill.] 1985) ("[w]hile deceit alone cannot support a punitive damage award, such damages may be allowed '. . . where the fraud is gross, or the case presents other extraordinary or exceptional circumstances clearly showing malice and willfulness'").

*Europlast, Ltd. v. Oak Switch Sys., Inc.* 10 F.3d 1266, 1276–77 (7th Cir. 1993). Deceit alone is insufficient. Willfulness, gross negligence, or a wanton disregard of the rights of others is necessary. *Bell Leasing Brokerage, LLC v. Roger Auto Serv., Inc.*, 865 N.E.2d 558, 569 (Ill. App. Ct. 2007) (quoting *Turner v. Firstar Bank, N.A.*, 845 N.E.2d 816, 825 (Ill. App. Ct. 2007)). Nevertheless, the award of punitive damages is at the discretion of the court and can be denied, including in situations such as this, where a defendant has not only defaulted but has failed to answer the complaint or partake in the litigation. *See Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (noting that although punitive damages are possible in a default judgment, they may be ill advised).

Blumenthal adequately pleads deceit and intent to deceive. He also states in his complaint that he relied on these deceptions; these allegations are taken as true and thus, as noted already, support a fraud count. Yet reliance is to be "reasonable." Here, the behavior of Anselmo cannot be condoned, but neither should the actions of Blumenthal. He was misled regarding the existence of a multi-million dollar contract, and willingly provided $1,585,000 toward ventures about which he knew very little, and he did not do any due diligence to assure that the deals in which Anselmo was engaged were legitimate. This is remarkable on several levels. Anselmo originally represented that he needed $1,200,000 in operating capital, and that once he received that capital he could purchase and produce the requested product (specialty embroidered shirts), deliver then to Northrup Grumman, and get paid by Northrup Grumman so that he could then pay back Blumenthal, all within

6

a 20-day period (from May 14 to June 6). Blumenthal admits that he never saw any communications that allegedly existed with Northrup Grumman, and in fact his complaint states that he was told by Anselmo that these funds were needed "in order to get the job" with Northrup Grumman, suggesting that the contract was speculative. Compl. ¶ 9. Then on May 25, after Blumenthal sent $985,000, he was asked for an additional $600,000, all of which was to be returned to him a mere twelve days later (June 6), including a 25% fee.

The well-known adage seems apt here: if it sounds too good to be true . . . it probably is. Based on the record before this court, Blumenthal was misled and harmed. But he has already received a default judgment on the basis of this very beneficial contract. The court sees little basis for punitive damages, given Blumenthal's excessive reliance.

Furthermore, the majority of the fraudulent activity of which Blumenthal complains occurred after June 6, when Anselmo made up various excuses for the delay in payment, and made many promises (literally) that "the check was in the mail." But these misrepresentations are not particularly relevant since Blumenthal did not rely upon them to his detriment, other than delaying in filing this litigation. Once Blumenthal did file, he received a very quick judgment—thirty-three days from filing to judgment on the breach of contract claim[2]—because Anselmo chose not to contest the action. In this context, and in the words of the Seventh Circuit, Anselmo's actions may have been "unconscionable," but punitive damages do not appear necessary. *Merrill Lynch*, 908 F.2d at 253. Blumenthal has been made whole through his breach of contract claim.

Blumenthal's request for punitive damages is denied.

---

[2] The case commended on December 26, 2007. Judgment on Count I was entered on January 28, 2008.

## IV. Request for Rule 54(b) finding

Blumenthal has also asked this court for a Rule 54(b) finding, to permit him to begin immediate collection against Anselmo even though Counts III and IV remain against M & M. This request is denied for two reasons. First, it is not necessary; Blumenthal can collect on his judgment already given to him on Count I. Second, it may be imprudent; the same outcome on Counts III and IV will likely be entered against M & M after the bankruptcy proceeding ends, and if Blumenthal decided to appeal this court's rulings—a possibility since he sought over three times more than what he has been awarded—it would be prudent to permit only one appeal rather than two.

## CONCLUSION

Count III as to Anselmo is dismissed. Judgment on Count IV as to Anselmo is entered in the amount of $1,850,000, plus pre-judgment interest. Double recovery on Count I and Count IV is prohibited. Any amount collected as to Count I or Count IV, from either defendant, applies toward the total amount Blumenthal may collect in this case.

The matter is stayed as to M & M Marketing LLC, pursuant to 11 U.S.C. § 362(a).

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 3, 2009